RAMESON BROTHERS, etc., et al.,
Appellants,

v.

George T. GOGGIN, Trustee in Bank-
ruptcy, etc., et al., Appellees.

Frederick M. RAMESON, Bankrupt,
Appellant,

v.

George T. GOGGIN, as Trustee in Bank-
ruptcy, etc., et al., Appellees.

William W. RAMESON, Bankrupt,
Appellant,

v.

George T. GOGGIN, as Trustee in Bank-
ruptcy, etc., et al., Appellees.

Nos. 14930–14932.

United States Court of Appeals
Ninth Circuit.

Jan. 2, 1957.

Rehearing Denied Feb. 11, 1957.

Paul Taylor, David Sosson, Kyle Z. Grainger, Los Angeles, Cal., for appellants.

Slane, Mantalica & Davis, Lewis C. Teegarden, Los Angeles, Cal., for appellees.

Before STEPHENS, FEE and BARNES, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

Orders of the Referee denying discharge in bankruptcy to the petitioner in each of three cases, respectively, were affirmed by the District Court. These appeals followed.

These three cases are inseparably bound together and may well be disposed of in one opinion. Each of appellants, Rameson Brothers, a co-partnership, Frederick M. Rameson, individually, and William W. Rameson, individually, was duly adjudicated a bankrupt upon an in-

voluntary petition filed against each respectively in the month of October, 1952.

The bankrupts were building houses for sale. At first, the operation was conducted chiefly through subcontractors. Eventually, bankrupts did most of the building by their own employees. They set up their own architectural staff and their own electrical, landscaping, plumbing, cabinet making, and painting divisions. An accounting division was maintained for whole operation. One of the bankrupts testified that they took title to certain lots without consideration from third parties and obtained a loan to cover the full cost of construction. A second mortgage was taken by the former owner of the lot, but the title remained in Rameson Brothers unless the property was sold. He testified that three or four of these houses were carried all during the construction operation. He also testified that none of the clients for whom Rameson Brothers built houses was subjected to this procedure, but the Referee who heard this testimony had grave doubts as to its credibility.

On February 3, 1953, the Referee made an order fixing March 17, 1953, as the last day for filing objections to discharge in each of the three cases.

Sol Jarmulowsky, a creditor, filed specifications of objections to discharge of the partnership on the last day set. The allegations are:

"(1) That the bankrupt did fail to keep proper records, books of account and records, from which his financial condition and business transactions might be ascertained; in that the said bankrupt caused the accounts and checks to be written up to show that the sub-contractors were paid; and checks were made out accordingly but never mailed; the books maintained by the bankrupt were kept under the direction of the said bankrupt and entries were made purportedly to show that progress payments were being made to sub-contractors, when in truth and in fact, no such

progress payments were or have been made.

"(2) The undersigned, creditor, upon information and belief alleges that the bankrupt did make and publish materially false statements in writing, respecting the financial condition of the bankrupt, in that said bankrupt did cause entries to be made purportedly showing that subcontractors had been paid and progress payments had been made by the bankrupt, when in truth and in fact no such progress payments had been made to material men, subcontractors or laborers."

This creditor did not file like objections in the cases of the individual bankrupts. The Trustee filed petitions for extension of time in each of the three proceedings, several of which were granted. Before the extended time expired, the Trustee presented a petition for extension in each of the three estates. The extension was granted to November 17, 1953, in the proceedings of the two individuals, but the order was not signed in the partnership matter. The order with regard to William W. Rameson was not dated until October 16, 1953. Within the time granted the Trustee filed specifications of objections in each of the three estates. The allegations of each are to the effect that there was a failure to explain loss of assets or deficiency of assets to meet liabilities.

At the hearing, the Trustee adopted the allegations of the specification of Jarmulowsky. The evidence clearly showed that there were not sufficient books or records kept so that the financial condition of the partnership could be ascertained while the operation was being carried on. The debts upon which such checks were to be applied showed on the books as paid in full, although there was often no money in the bank to pay them and although the checks were not delivered or sent out when such entries appeared. The Trustee indicated that by great labor he was finally able to ascertain from the books and records the ap-

proximate condition of the partnership at the time bankruptcy intervened. Therefore, other matters will now be considered. However, the testimony upon this phase throws considerable light on the failure of the partners to explain the losses.

The objections to the discharge thus filed in each estate were under § 14, sub. c(7),[1] The hearing was consolidated for all three cases by consent. Bankrupts object in this Court for the first time to the consideration of the § 21, sub. a [2] examination of Frederick M. Rameson and William W. Rameson. No objection was made before the Referee. They quoted extensively therefrom.[3] This record was included in each of the certificates of review of the Referee. Bankrupts made use of the transcript of this examination in their petition for review of the order of the Referee. Under these circumstances, the transcript was part of the record before the Referee, whether or not it was formally marked.

As to the substance of the charge, the record shows that each of the individual bankrupts expressly said he was unable to account for the tremendous loss of assets. This position was adhered to by each, although each was given plenty of opportunity to explain. Both seemed to betray a disinterest in the uses of the money which was taken in and a disposition to shield from discovery the actual operations of the business. The answer now made in appellants' opening brief is that there was nothing to explain, since the Trustee had been able to ascertain from the books and records the true financial condition of the business and costs which were running far in excess of the contract price.

The Trustee does not attempt to meet the argument as to the evidence submitted upon this phase of the matter, but to us the specification of objection to discharge appears well taken.

The Trustee relies exclusively upon his own specification, filed November 17, in each of the estates. But the order was not signed by the Referee extending time as to the partnership, although such an order was signed in the Frederick M. Rameson estate on October 15 and in the William W. Rameson estate on October 16. This later order is in plenty of time. The petitions and forms of order were all submitted at the same time on October 15, before the time the former limitation had expired. Since no objection was made, so far as the record shows, either to the Referee or to the District Judge, the objections of the Trustee were duly and regularly filed before hearing.

The cause was heard by consent of all parties. If the Trustee had not filed his petition in time and before the expiration of the limitation, there would be a different question. On the record as it stands, this Court holds the Referee had granted the motion for extension timely filed in each of these cases.[4] The clerical misprision of failing to sign the order in the partnership case and of dating the order in the William W. Rameson case one day after the expiration of time cannot be held against the Trustee. The intention clearly appears since one order was correctly signed and dated.

In any event, following the liberal viewpoint expressed in an early case,[5] the courts have held that a referee has the power to permit specifications objecting to discharge to be filed late,[6] where good

---

1. Bankruptcy Act, § 14, sub. c(7), 11 U.S.C.A. § 32, sub. c(7).

2. Bankruptcy Act, § 21, sub. a, 11 U.S.C.A. § 44, sub. a.

3. The transcript shows three separate occasions where quotation was made from the § 21, sub. a, examination at pages 164–7, 203–4 and 209–10.

4. Dulany v. Coppard, 5 Cir., 145 F.2d 468, certiorari denied 325 U.S. 861, 65 S.Ct. 1199, 89 L.Ed. 1982, rehearing denied 325 U.S. 895, 65 S.Ct. 1409, 89 L.Ed. 2006.

5. In re Levin, 1 Cir., 176 F. 177.

6. Richey v. Ashton, 9 Cir., 143 F.2d 442.

reason appears[7] and the delay is not for the purpose of putting improper pressure upon the bankrupt.[8] Similarly, where the Referee accepted the specifications late and later held hearings on them, he was held to have deliberately extended the time for filing, even though no express order to that effect was entered.[9] In another case, the express granting of an extension after the due date was upheld as an exercise of the discretion of the Referee.[10] Certainly, in the case at bar, where the Referee had attempted to grant extensions and there were only minor deviations of a highly technical character, the fact that he thereafter heard the evidence on these specifications of objection after the filing thereof establishes the fact that he had granted extensions whether or not the formal record contained such an express order. It cannot be said that the action of the Referee tended to condone negligence or encourage sloth on the part of the Trustee. Nor is there any showing that the Trustee was attempting to bring pressure on the bankrupts.

But one of the individual bankrupts testified that he did not know the operations were running at a loss until a few days before he conferred with the creditors and the bankruptcy petitions followed. He admitted he did not receive periodic statements of the books showing condition. But this partnership, from the commencement of its operations, refused to give any financial statements to anyone. As to this, the Referee said at the close of the hearing:

"* * * these gentlemen refused to give a financial statement because they did not want their financial position to be known to persons who might extend credit. To my mind that indicates a desire at least to hide that which would be revealed by a statement."

An answer given by one of the individual bankrupts to the Referee is illustrative:

"The Referee: In other words, you started from scratch in this thing, apparently, and didn't know anything about the building business and didn't know how to keep up with the financial status. Isn't that true? You sat there and took in money and didn't know what happened to it. All right sir.

"The Witness: We didn't know that was the case."

The Referee remarked during the hearing:

"I am clearly of the opinion that these gentlemen were very, very indifferent as to what was going on in

---

7. In re Brecher, 2 Cir., 4 F.2d 1001 (excusable failure of Clerk to file specifications in time); Rerat v. Fisk Tire, Inc., 8 Cir., 28 F.2d 607 (surprise to Trustee); Richey v. Ashton, supra; Paully v. Magnotti, 2 Cir., 182 F.2d 466 (facts supporting late specification concealed by bankrupt's fraud). See also Northeastern Real Estate Securities Corporation v. Goldstein, 2 Cir., 91 F.2d 942, 944. It is not apparent that such mitigating circumstances existed in In re De Cillis, D.C., 83 F.Supp. 802; In re Palestine, 2 Cir., 75 F.2d 500; United Wall Paper Factories v. Hodges, 2 Cir., 70 F.2d 243.

8. Lerner v. First Wisconsin Nat. Bank, 294 U.S. 116, 55 S.Ct. 360, 79 L.Ed. 796.

9. In re Massa, 2 Cir., 133 F.2d 191; In re Legon, D.C., 85 F.Supp. 946. This Court said in Richey v. Ashton, supra, 143 F.2d at page 443: "We consider its [the specification's] consideration as the equivalent of an order extending the time to file objections, because of the later discovery of the fraud."

10. "The present law contains important amendments in respect of discharge: Not only is appropriate jurisdiction conferred upon the referees, but the power of the latter to grant an extension of the time to file is expressly provided * * *.

   *     *     *     *     *

"Prior to the amendment of the Act in 1933, the court possessed the power to extend the time for filing specifications of objection, and the withdrawal of that power by the 1933 amendment was deemed to be deliberate and highly significant; * * *.

"Equally the restoration of the power to the court in the 1938 revision must be similarly contemplated." In re Weidemeyer, D.C., 32 F.Supp. 809–810. This is the present law.

their business. They took no personal account of it. They left their people do work without proper supervision on their part. They defrauded a number of people, as the testimony shows, by inducing them to convey lots to Rameson Brothers on the representation that they could more readily finance the lots, which is a misstatement because they lend money not on the color of the man who owns title, but on the security of the property."

Although this opinion was withdrawn as premature when the bankrupts claimed the right to introduce further testimony, it illustrates the attitude of the Referee as to the evidence in the record.

Based upon the record, the Referee denied discharge in each of the three cases. The findings are of the following substance in each case:

"Findings of Fact

"A. Trustee's Objection.

"Upon reading and review of portions of the transcript of the Section 21a examination of Frederick M. Rameson, I find that he has failed to offer any explanation for the deficiency of assets to meet his liabilities.

"B. Creditors' Objection.

"1. That Frederick M. Rameson and William W. Rameson were the copartners composing the partnership known as Rameson Brothers. Said partnership did follow and utilize the accounting and bookkeeping practices hereinafter enumerated.

"2. Said firm frequently prepared checks with which to pay creditors supplying materials in advance of their actual negotiation.

"3. Said firm marked bills and invoices as paid when said checks were prepared and not at the time of negotiation.

"4. Said firm did frequently give checks to creditors in payment for materials supplied with an oral agreement between said parties not to cash said checks until further notice from Rameson Brothers.

"5. Said firm marked bills and invoices as paid when said checks were given out and not when actually cashed and/or negotiated.

"6. Said firm was behind in posting entries in its books of accounts or records frequently as long as two or three months.

"7. The books of account or records of said firm did not truly reflect its financial condition and business transactions because bills and invoices were marked paid before actual payment and because said firm was behind in posting entries in its books of account or records; and I further find as  *  *  *"

It requires no elaborate discussion to convince one that the discharges were correctly denied. The charge in each instance was approximately in the language of the statute. The proof was substantial and uncontroverted. The fact that the Referee early became convinced that this was the case does not militate against his findings and conclusions.

Furthermore, the Judge affirmed the Referee. By that act, the District Court adopted and confirmed the findings of the Referee. Here again, we are met with technical objection. It is said the District Judge should have written a new set of findings. In many cases it is advisable for a complete set to be entered in the District Court. It is obvious from these above quoted that this would have been a useless gesture. But the statute does not contain any such requirement.[11] It is left to the discretion of the District Judge.

Where the Referee and the District Judge concur as to findings, little is left for the appellate courts. We approve and affirm the findings in this case. The ques-

11. Section 2, sub. a (10) of the Bankruptcy Act, 11 U.S.C.A. § 11, sub. a (10), allows reviewing courts to "confirm" findings, which clearly is what was done here.

tions of law which are raised are of an extremely technical character. Of these we have disposed during the course of the opinion.

Affirmed.

Malcolm B. TEBBS

v.

ALCOA STEAMSHIP COMPANY, Inc., Appellant.

No. 11942.

United States Court of Appeals Third Circuit.

Argued Jan. 29, 1957.

Decided Feb. 25, 1957.

W. W. Bailey, Charlotte Amalie, St. Thomas, V. I., for appellant.