In the Matter of Cecil M. JACKSON, Bankrupt, Appellant,

v.

A. S. MENICK, Trustee in bankruptcy of Cecil M. Jackson, bankrupt, Appellee.

No. 16314.

United States Court of Appeals Ninth Circuit.

Nov. 9, 1959.

See also 9 Cir., 260 F.2d 563.

Irving Sulmeyer, Los Angeles, Cal., for appellant.

Craig, Weller & Laugharn, Hubert F. Laugharn, Frank C. Weller, Thomas S. Tobin, Andrew F. Leoni, Los Angeles, Cal., for appellee.

Before STEPHENS, CHAMBERS and MARIS, Circuit Judges.

STEPHENS, Circuit Judge.

The appellant Jackson has been denied a discharge in bankruptcy pursuant to Title 11 U.S.C.A. § 32, sub. c, for the following reasons: (1) He obtained property on credit from the Union Hardware & Metal Co. by submitting a false financial statement on April 25, 1952; (2) He obtained a loan from the Security First National Bank of Los Angeles by submitting a false financial statement on October 31, 1955; (3) He failed to satisfactorily explain the diminution of his assets; and (4) He swore to a false oath in filing his statement of unsecured debts. The order of the referee denying discharge was affirmed by the District Court, and Jackson has appealed. Two other objections to discharge,—that he failed to keep adequate records of his financial condition, and concealed secret records,—have been decided in his favor, and are not before us.

■ The financial statement given to the Union Hardware & Metal Co. in April, 1952, showed a net worth of $39,-241.44. This favorable picture was produced by omitting all "personal" liabilities, that is, debts which had not been secured by his business, Jackson's Toy Shop. Jackson testified that at that time, these undisclosed liabilities exceeded his net worth, and that he had been losing money since 1950. What his exact position was is not now known.

The statement was prepared by a CPA, who testified that the personal liabilities were omitted on his responsibility. Jackson said that he did not remember checking the statement, and that he relied completely on his accountant. He thus seeks to show that any deception practiced was innocent, and that he did not intentionally deceive the Union Hardware Co.

The accountant even argued that the statement was true and correct, because it did not purport to be a complete financial picture, but only the "Property Statement of Cecil M. Jackson, dba Jackson's Toy Shop." He said that this type of statement was often used, because such personal assets and liabilities as utility bills, household furniture, cash in your pocket, etc., were only a nuisance to all concerned.

It may be customary in arriving at a present worth figure to omit relatively small current expenses, but these personal liabilities here omitted, were substantial and exceeded the bankrupt's net worth. The business involved was a sole proprietorship. The critical statement

was prepared for and was used as a basis for the obtaining of credit, and the statement contained the following: "Notes or debts payable to others (including relatives or friends)—none." No other conclusion was possible but that the statement was intentionally false.

The financial statement given to the Security First National Bank on October 31, 1955, showed a net worth of $71,076.00, although actually Jackson was further in debt then, than when he submitted the statement to the Union Hardware Co. He had no net worth whatever. The deception was again produced by omitting all "personal" liabilities, and more since he omitted the mention of a $12,000 note to the Union Hardware Co., for past due merchandise accounts. His position at that time was so shaky that he had to pay his bills with cash or cashier's checks. He claims that the bank did not rely on the financial statement, but instead upon his past record of prompt payment and good character. The record is clear however, that the bank took the false representations into consideration in granting credit.

█ Jackson also raises a procedural point with respect to this charge. The false statement given the bank on October 31, 1955, was properly pleaded in the original objections to discharge. But in the first amendment, it was only mentioned incidentally, and a different statement of October 6, 1954, with a loan made in reliance thereon on April 24, 1952, was pleaded. The second and third amendments corrected this error, but by then the statute of limitations had run. Jackson argues that it was therefore too late to file new objections, and that the allegations could not be mere amendments, since the original objections had been wholly superseded by the first amendments. While this technicality is ingenious, it is unavailing. The referee has ample discretion to allow the filing of objections beyond the time allotted. See Rameson Bros. v. Goggin, 9 Cir., 241 F.2d 271, 273.

█ In answer to the charge that he has failed to satisfactorily explain the diminution of his assets, Jackson claims that it is unfair to start with his financial statements, which were "technically" inaccurate, and that his true financial condition can be determined from his records. To support the latter contention, he cites the fact that the referee rejected the charge that he failed to keep adequate records. This is immaterial. The duty to explain imposed by the statute is a positive one. The bankrupt only pointed to boxes which contained a jumble of unassorted memoranda, checks, bank statements and bills, when asked to explain. In particular, we note that no explanation has been offered of the use made of cashier's checks. See Rameson Bros. v. Goggin, supra.

The finding that Jackson executed a false oath when he omitted the $14,000 note owed to the Far East Missionary Society from his list of unsecured debts is amply supported by the evidence. Jackson claims that the omission was inadvertent, and that he could have no reason for intentionally omitting it. But there was evidence that the authorization for the loan was irregular, and that the members of the Society who knew about it were willing to forget the loan completely. Jackson would thereby obtain a private discharge, while at the same time diminishing the losses he had to explain, and weakening the case for the charge that he had used false financial statements. There was testimony that he had attempted to cover up another of his personal liabilities, involving the sum of $18,000. The finding that he knowingly omitted the debt is fully supported.

█ The final contention made is that it was error to admit into evidence the entire transcript of the first meeting of creditors because of the prejudicial remarks by the referee which it contained. This referee had characterized Jackson's statement that he had forgotten the $14,000, debt, as "the biggest lie I have ever

heard in this courtroom." [1] The remark, to say the least, was injudicial but could not have been prejudicial to the rights of the bankrupt, because there were other and compelling grounds for denying a discharge.

Affirmed.

---

1. The referee who made the remark disqualified himself and did not further officiate in the case.