**In the Matter of Marilyn Sliman McBEE, wife of/and Hal Dean McBee, Bankrupts, Appellants,**

v.

**Florence SLIMAN and St. Landry Bank & Trust Co., Appellees.**

No. 74–3152
**Summary Calendar.**\*

United States Court of Appeals,
Fifth Circuit.

May 2, 1975.
Rehearing Denied May 28, 1975.

---

\* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, et al., 5 Cir. 1970, 431 F.2d 409.

Rudolph R. Schoemann, New Orleans, La., for appellants.

William E. Logan, Jr., Lafayette, La., James T. Guglielmo, Opelousas, La., Leonard Avery, Asst. U. S. Atty., New Orleans, La., for appellees.

Before BROWN, Chief Judge, and THORNBERRY and AINSWORTH, Circuit Judges.

BROWN, Chief Judge:

Marilyn and Hal McBee appeal from the denial by a referee of their discharge in bankruptcy—affirmed in turn by the District Court. They contend that it was an abuse of discretion for the referee to deny a discharge to both or at the least to Marilyn McBee individually. We disagree and affirm.

The McBee creditors challenged the voluntary petition in bankruptcy on the ground that the bankrupts had failed to maintain books or accounts to satisfactorily explain a loss of $14,000 in assets as required by 11 U.S.C.A. § 32. By their objections, the creditors brought to the fore the petitioner's burden to explain what happened to the money. Minella v. Phillips, 5 Cir., 1957, 245 F.2d 687; 1A Colliers on Bankruptcy § 14.12, p. 1310 (1973 rev.). Together the McBees testified that the $14,000—Marilyn McBee's separate property—was placed in a closet in their home for approximately two weeks. Then Hal McBee, unbeknownst to his wife, took the money and went on a junket to a Las Vegas gambling casino in an attempt to recoup enough to pay his debts. Within 24 hours he had lost all at the black jack tables and flew home with only airline ticket stubs and hotel receipts to account for the $14,000 loss. He was able to testify that the Sands was the scene of his debacle but except for the fact that the dealer had a mustache, McBee's memory of specific bets and the manner of the losses was vague. Who hit whom or with what and when was never revealed.

The referee found the gambling spree explanation unacceptable to justify the absence of any records to account directly for the loss. He emphasized the cavalier, nonchalant attitude shown by the McBees toward their loss, as well as the fact that this was a substantial sum as compared to the petitioners' income—$10,000 to $12,000 a year. While allowing that gambling records were by their nature hard to come by, the referee concluded that a bankrupt had to produce some kind of direct evidence in order to defeat an objection to his petition based on a failure to explain loss of assets. Since there was no justification offered by the petitioners for their failure to maintain records of the loss, the discharge was denied.

▄▄ Broad discretion is vested in the referee to grant or deny a bankruptcy petition based on a determination that books or records are adequate under the terms of the statute and the facts of each case. Goff v. Russell Company, 5 Cir., 1974, 495 F.2d 199, 202. Where the referee's determination has been upheld by the District Court, it will not be overturned "except for the most cogent reasons." Baum v. Earl Millikin, Inc., 7 Cir., 1966, 359 F.2d 811. By this standard we find no justification in the arguments offered by petitioners or the facts of their case to justify reversal. For himself Hal McBee contends that the inherent impracticability of maintaining gambling records is adequate justification. In addition, his lack of technical legal title to his wife's separate property should, he contends, eliminate any responsibility he may have to account for the $14,000. First, he misunderstands his burden under the statute. It is to convince the referee either by direct or circumstantial evidence that the money was in fact lost and the gambling explanation was not merely a ruse to evade creditors. See generally 1A Colliers on Bankruptcy § 14.12, pp. 1303–06 (1973 rev.). Second, Hal McBee had absolute control over his wife's income and assets. Therefore, he cannot avoid the responsibility to account for sums that inured to his benefit. See, e. g., In Re Gentile, W.D.Ky.1954, 123 F.Supp. 723, 727.

▄▄ Similarly, we affirm the denial of a discharge to Marilyn McBee despite some slight hesitancy. While it is true that—if Hal McBee is to be believed—the property was lost through no fault of her own, she did participate in what can only be judged as a very stealthy handling—if not outright concealment—of the money. While there is no contradiction to her story that Hal McBee did not disclose his gambling mission until after his return, we would point out that such collusion would be virtually impossible to prove. In any case, the burden under the bankruptcy law to explain the loss and justify the absence of records applies as evenly to Marilyn McBee as it does to her husband.

Affirmed.