In re Alan HIRSCH a/k/a Allen Hirsch and Sarina Mizrahi Hirsch a/k/a Sarina M. Hirsch a/k/a Sarina Joy Hirsch, Debtors.

Gundolf KOPPEY and Carol O. Koppey, his wife, Plaintiffs,

v.

Alan HIRSCH a/k/a Allen Hirsch and Sarina Mizrahi Hirsch a/k/a Sarina M. Hirsch a/k/a Sarina Joy Hirsch, Defendants.

Bankruptcy No. 83–00431–BKC–JAG.
Adv. No. 83–0624–BKC–JAG–A.

United States Bankruptcy Court,
S.D. Florida.

Jan. 10, 1984.

Bernard I. Rappaport, Miami, Fla., for plaintiffs.

Ira Pozen, P.A., Miami, Fla., for debtors-defendants.

**644**

## FINDINGS AND CONCLUSIONS

JOSEPH A. GASSEN, Bankruptcy Judge.

This matter was tried on the complaint of the creditors Gundolf Koppey and Carol O. Koppey objecting to the discharge of the debtors and to the dischargeability of one debt. Plaintiffs object to the debtors' discharge on the basis that they failed to keep sufficient records, that they are unable to account for losses, that they omitted from their schedules several assets previously owned, and that they hindered, delayed or defrauded their creditors by converting whole life insurance policies to term policies prior to filing for bankruptcy. The Koppeys also object to the dischargeability of the debtors' debt to them, alleging that Alan Hirsch obtained the money through false representations.

The facts alleged by both parties in this case are not only rather unusual, but are such that the credibility of the parties is a very significant factor. The heart of the debtors' defense is that Alan Hirsch is a compulsive gambler, who acted recklessly and who went to great lengths to obtain funds and to continue his gambling activities during the period in question. Alan Hirsch admits that his actions were considerably less than admirable, but denies that they were such as to prevent his discharge in bankruptcy.

The policy of bankruptcy is to grant debtors a fresh start, and although dishonest or uncooperative debtors will be denied discharge in bankruptcy, the plaintiff carries a very heavy burden in proving facts to deny a discharge. The facts of this case certainly gave plaintiffs basis to question the right to discharge of the debtors, but the court concludes, upon a close examination of those facts, that the discharges should not be denied. It also concludes that there are insufficient grounds to deny the dischargeability of the individual debt of the debtors to the plaintiffs.

The evidence presented at trial reviewed the activities of the debtor Alan Hirsch for a period of about two years prior to the filing of the voluntary bankruptcy petition on March 10, 1983. Until approximately December of 1982 Hirsch was working as a licensed real estate agent. He testified that he was also, in effect, a gambling addict. Although there are certain inconsistencies in the testimony of the debtors which could be reconciled in a manner favorable or unfavorable to them, from the totality of the evidence the court is satisfied that Hirsch does, indeed, have a serious gambling problem, and that events occurred essentially as he testified to them.

During this period Hirsch's regular business activities were subordinated to his interest in trading in stock options. He testified that he traded daily, and made "a couple hundred" trades each month. He traded in only one brokerage house at a time, but worked his way through several different brokers. His trading generally was not profitable, and his net losses on the stock market during this period were approximately $126,000. Hirsch testified that during this time he believed that he was participating in a legitimate investment program, and only later saw that he was using stock option trading as a method of gambling. At this time he also gambled at Jai-Alai, going two to three times a week and losing $50 to $100 on every game.

To finance these activities Hirsch borrowed heavily, especially because he was not devoting enough time to the real estate business to earn much there. He carried a pad of form promissory notes with him, and borrowed a few thousand dollars at a time from a great many friends and acquaintances, obtaining the money by giving, or promising to give, exorbitant interest rates. "Interest" was generally paid immediately, for example, with Hirsch receiving $3,000 and giving a note for $3,500. The notes were generally for a short-term period. Some were repaid, some rolled over, and many remained unpaid and were scheduled in bankruptcy.

As part of his job responsibilities at Midtown Realty Alan Hirsch collected rent for property owners, from which mortgage payments were to be made. Instead, he

used several thousand dollars of the rent money himself, making some of the mortgage payments later when he had other funds available. Some mortgage payments, however, were left unpaid by Hirsch. When the problem was discovered, his employer, Carlos Dominguez, made up the deficits and took a third mortgage of approximately $13,000 on the Hirsch home.

Alan Hirsch also obtained his wife's jewelry, most of which was kept in a safe deposit box which only he entered. He testified that he obtained approximately $1,500 for the jewelry and sold it to some men he knew by first name only at the race track. Ultimately he also sold her wedding ring. Sarina Hirsch works at an auto leasing business owned by her parents and brother. She earned approximately $10,000 per year, as well as being given the use of two automobiles. Both she and her husband testified that she was not aware of his gambling problem or even of his stock trading until the end of 1982. She testified that he had irregular hours in his business, so she had no reason to suspect that he was going to Jai-Alai, and that he was usually able to get the mail so that she did not see the statements from brokerage houses. He testified that he took great pains to prevent her learning of the various activities.

Apparently the day of reckoning for Hirsch came when one of his creditors became impatient, and began using self-help techniques to collect. The family received death threats and there was shooting at their home, although no one was injured. At about the same time the plaintiffs wrote a letter to Mrs. Hirsch, through which she learned of her husband's indebtedness to them (Defendants' Exhibit A). As a result of the revelations, the debtors' marriage suffered some strains, Mrs. Hirsch and the children moved out, and Mr. Hirsch barricaded himself in the house with mattresses against the windows for protection. In about January 1983 he began going to Gamblers Anonymous where he found that he met most of the criteria of a serious gambler. Mrs. Hirsch accompanied him to at least one meeting, but did not learn of the full scope of his gambling activities and did not know of his Jai-Alai gambling until after the bankruptcy petition was filed.

■ The most serious of plaintiffs' arguments against granting the debtors their discharges are that they failed to keep adequate records under 11 U.S.C. § 727(a)(3) and that they failed to satisfactorily explain any loss of assets to meet their liabilities under § 727(a)(5). The two issues are related in that it is usually difficult for a debtor to account for losses unless adequate records have been kept.

Gambling is an activity for which records are seldom kept. It is therefore a good way for a debtor to try to explain the disappearance of funds which may be secreted elsewhere. For this reason, where a debtor's explanation for the loss of substantial assets is that he lost them gambling, a discharge has often been denied. The courts have required corroborating evidence, which did not exist in same cases, or they simply did not believe the debtor's story. See, e.g., *McBee v. Sliman,* 512 F.2d 504 (5th Cir.1975); *Gaudet v. Cowen,* 297 F.2d 227 (5th Cir.1961). In this case there was more than simply Alan Hirsch's testimony that he lost money on gambling. His pattern of actions over a substantial period is consistent with the explanation that he was a compulsive gambler. His wife's story corroborated his, and both witnesses seemed credible after extensive examination on two trial dates which were almost two months apart. Finally, the pattern of stock market trading, for which there are records, corroborates the debtor's explanation of his gambling tendencies. The court concludes that Alan Hirsch satisfactorily accounted for his losses through the explanation of losses in gambling.

■ Plaintiffs' argument that the debtors failed to keep adequate records is more troubling. Alan Hirsch testified that he did not keep regular records of his debts because he did not want his wife to learn about them. He did not keep all the statements from his stock brokers, because he knew that records would be available from them if he needed them. This is under-

standable, if not a wise business practice. He apparently kept no records of the rents which he collected and wrongfully withheld and he did not even have records of his regular real estate activities. Some of the records which the debtor did keep were not found until the eve of trial, and the records produced were not organized so as to provide a coherent picture of the Hirsches' financial situation. The debtors' attempt to provide a written general accounting at trial and in a post-trial memorandum was inaccurate. Yet, despite all these deficiencies, and despite Alan Hirsch's obvious skill at subterfuge as evidenced by his actions while he was gambling, the court concludes that the lack of organization and the ineptitude in the accounting is due to incompetence rather than deviousness. The court is satisfied that there is ultimately no harm to the creditors from the failure to keep better records, and therefore the failure was "justified under all of the circumstances of the case" and does not subject the debtors to the denial of their discharge under § 727(a)(3). In discussing the predecessor to this statutory section, the Fifth Circuit Court of Appeals in *McBee v. Sliman*, 512 F.2d at 506, stated that the burden of the debtor under the statutory requirement of keeping adequate books or records is "to convince the referee either by direct or circumstantial evidence that the money was in fact lost and the gambling explanation was not merely a ruse to evade creditors."

Plaintiffs also complained that the debtors retained no records of a bank account which had been closed a few months prior to bankruptcy. Mrs. Hirsch testified that the balance in the account at the time it was closed was minimal, and that it was closed after she learned that her husband was a gambler and that she thereafter kept her salary payments in travelers checks so that they would be unobtainable by him. By the time of the second hearing the debtors had obtained copies of the records from the banks. The failure to keep these particular records was not unreasonable under the circumstances and does not justify denial of discharge.

The plaintiffs further argued that the debtors' discharges should be denied because they filed false schedules, in that they omitted several items from the schedules. Although not pled in the complaint, at trial a major thrust of this argument was that there was no reference in the schedules to gambling losses. The debtors agreed that Mrs. Hirsch was unaware of the Jai-Alai gambling at the time the bankruptcy was filed, and Alan Hirsch's explanation for the omission was that he did not want to reveal the full extent of his gambling to his wife, or that he overlooked the question in the rush of filing. The debtors' explanation for omissions generally was that the petition was filed in haste, that they were at their lawyer's office until midnight one night and returned to review the schedules at 7:00 the next morning, and that they were in a disturbed mental state because of circumstances at that time.

The most substantial omission alleged by the plaintiffs was that of an asset, an Omega watch, which was not listed. Alan Hirsch testified that he gave the watch as security to a creditor and believed that it had already been forfeited before the petition was filed. The creditor testified that he still had the watch, and that he had talked to Mr. Hirsch at a chance meeting not long before the bankruptcy, at which time Mr. Hirsch stated that he intended to redeem the watch. Hirsch's rebuttal testimony was that the two met on more than one occasion and that the conversation had occurred at a much earlier meeting. Although the testimony of the two witnesses is irreconcilable, the court concludes that Hirsch genuinely believed, at the time the bankruptcy petition was filed, that the watch had been forfeited.

Another item not scheduled was the mortgage on the debtors' residence held by Carlos Dominguez. There was no benefit to the debtors to be gained by omitting this, and the court finds credible Mr. Hirsch's testimony that he did not remember it because of the nature of its origin, that is, that no debt was incurred at the time the mortgage was given.

As to each of the items omitted by the debtors from their schedules, the court concludes that the plaintiffs have not carried their burden of proving that the omissions were knowingly and fraudulently made, and therefore the omissions do not justify denial of the debtors' discharges.

Although included in the complaint, at trial plaintiffs did not press the argument that the conversion of whole life insurance to term insurance prior to bankruptcy was a fraudulent transfer, and the court believes that there is no basis for such a conclusion. Therefore, there is no ground upon which the debtors' discharges should be denied.

Turning to the question of the dischargeability of the debt to the Koppeys, the testimony of the parties is again contradictory. Alan Hirsch testified that he simply borrowed money from the Koppeys at a high rate of interest, as he did with all the other individual lenders from whom he borrowed. Mr. Koppey testified that the money was never given to Alan Hirsch as a loan, but that it was given to him in a fiduciary capacity. According to his testimony, it was Mr. Koppey's understanding that either the money was being borrowed by Mr. Hirsch's realty firm on a short-time basis to enable it to purchase property for its own investment purposes, or it was to be invested on the Koppeys' behalf in an unknown investment which had a guaranteed yield of three percent per month. Koppey admitted that in his previous transactions with Midtown Realty his checks had been made out to the business and not to Hirsch personally as the checks in question were, and he admitted that he was not aware of any type of investment which paid interest at 3% per month. The court finds that the Koppeys' version of how the debt was incurred is not credible, and that the plaintiffs have failed to prove any fraud in Alan Hirsch's obtaining or keeping the funds from them. Therefore, the debt to the Koppeys will be discharged.

Pursuant to B.R. 9021(a), a separate Final Judgment incorporating these Findings and Conclusions is being entered this date.