In re Andre T. RIDLEY, Debtor.

Barry WORTMAN and Denise
Wortman, Plaintiffs,

v.

Andre T. RIDLEY and The Good News,
Inc., Defendants.

Kathleen DWYER, Trustee, Plaintiff,

v.

Andre T. RIDLEY and The Good News,
Inc., Defendant.

Barry WORTMAN and Denise
Wortman, Plaintiffs,

v.

Andre T. RIDLEY, Defendant.

Bankruptcy No. 88–11660–HAL.

Adv. Nos. 88–1458, 89–1006 and 89–1051.

United States Bankruptcy Court,
D. Massachusetts.

May 25, 1990.

Charles E. Vander Linden, Ciota, Starr & Vander Linden, Fitchburg, Mass., for plaintiffs, Kathleen Dwyer, Trustee and Barry and Denise Wortman.

Keith S. Halpern, Silverglate, Gertner, Fine & Good, Boston, Mass., for defendants, Andre T. Ridley and The Good News, Inc.

## MEMORANDUM ON DENIAL OF DISCHARGE

HAROLD LAVIEN, Bankruptcy Judge.

Three complaints seeking to deny the debtor a discharge were based on the same basic facts and were heard in a joint trial. The plaintiffs were the trustee and two creditors, a husband and wife, whose claims against the debtor sprang from problems in a house built for them by the debtor. The complaints allege that discharge should be denied based on 11 U.S.C. § 727(a)(3), failure to keep sufficient records to ascertain the general financial condition of the debtor; 11 U.S.C. § 727(a)(4)(D), failure to cooperate with trustee and withholding of records; 11 U.S.C. § 727(a)(5), failure to explain loss of assets. A second count in two of the complaints against a non-profit religious corporation founded by the debtor sought to pierce the corporate veil. This count was transferred to the district court for trial, since the bankruptcy court lacked jurisdiction over the corporation which had not filed a bankruptcy petition.

■ The debtor's brief accurately states the basic principles that control this type of determination. The plaintiffs bear the burden of persuading the Court that the debtor is not entitled to discharge because of inadequate records. Bkrcy. Rule 4005. *See Matter of Martin*, 554 F.2d 55, 58, fn. 1 (2nd Cir.1977); *Matter of Oesterle*, 651 F.2d 401, 403 (5th Cir.1981). 11 U.S.C. § 727 "discharge is to be construed liberally in favor of debtors and strictly against the objecting creditor." *In re Usoskin*, 56 B.R. 805, 813 (Bkrtcy.E.D.N.Y.1985). "The plaintiff bears a heavy burden in proving facts to deny a discharge." *In re Hirsch*, 36 B.R. 643, 644 (Bkrtcy.S.D.Fla.1984). In general, "[d]oubts ... as to the adequacy of records should be resolved in favor of honest bankrupts." *In re La Belle*, 112 F.Supp. 447, 451 (S.D.Cal.1953). The trustee must prove more than the "bare asser-

tion that the debtor's books are inadequate." *In re Sutton*, 39 B.R. 390, 398 (Bkrtcy.1984). The creditor "is burdened with proving that the debtor's financial condition *cannot* be ascertained". *In re Becker*, 74 B.R. 233, 237 (Bkrtcy.E.D.Tenn. 1987) (emphasis in original). The trustee bears the burden of proving the absence of a justification for whatever inadequacies exist in the debtor's books and records. *Matter of Oesterle*, 651 F.2d 401, 403 (5th Cir.1981); *In re Golowaty*, 13 B.R. 781, 784 (D.Vt.1981). The debtor is not under a duty to maintain his records in an elaborately scientific and comprehensive form.

■ In determining whether the debtor has kept adequate books and records, the Court should apply a case-by-case analysis, taking into account the particular facts and circumstances of the debtor's case. *In re Sutton*, 39 B.R. 390, 398 (Bkrtcy.M.D.Tenn. 1984); *Matter of Ellison*, 34 B.R. 120, 124 (Bkrtcy.D.M.D.Ga.1983). A failure to keep adequate books and records "may often be 'justified under all the circumstances'," *Goff v. Russell Company*, 495 F.2d 199, 201 (5th Cir.1974). Records are sufficient if they allow the court and creditors to trace the debtor's financial dealings.

Because each case must, to a larger extent, turn on its own facts, all of the cases cited cannot readily be reconciled, especially since the credibility of the debtor is often a key element. In the matter presently before the Court, the debtor often seeks to substitute for records his unsupported general explanations but his memory seems to shift with the needs of the moment.

The debtor attempted to justify some of his conduct by testifying that certain documents were lost or possibly stolen. His testimony at trial on this issue directly contravenes the statements made under penalty of perjury in his Bankruptcy Petition (Plaintiffs' Exhibit 19–J).

"If any of these books or records are not available, explain.        <u>None</u>

Have any books of account or records relating to your affairs been destroyed,

lost or otherwise disposed of within the two years immediately preceding the filing of the original petition, herein?                                    None

The debtor's credibility also suffers as a result of his claim at trial that it was necessary to use cash to purchase plants for resale. This claim of the need for cash transactions is directly contradicted by documents in evidence indicating that payments were made for plants by checks written to Tropiculture and E.T. Ehlers & Sons.

*The Basic Facts:*

Andre Ridley is one of the founders of the Church of the Good News. He has served as the Church's minister for 19 years. In 1986, Mr. Ridley began a home-building business in Ashburnham. Subsequently, Mr. Ridley sold only one home, which was purchased in 1987 by the Wortmans, plaintiffs in this action. Two additional homes were partially built. Mr. Ridley engaged in two additional money-making enterprises. He purchased plants in bulk and then resold them from the back of a truck for cash. Mr. Ridley also sold sand and gravel from property in Ashburnham, which was also done on a cash basis. In his Petition, he described himself as a "self-employed ... carpenter, street vendor and minister." He has filed no tax returns. He has filed no sales tax returns. He has received an 8th grade education, and has taken several courses while at seminary. The debtor maintained no regular bookkeeping system for his various business transactions. The best records which the trustee has been able to obtain are in the form of various checks drawn upon a construction loan account, showing approximately $60,000 to $85,000 each year withdrawn to "cash" or payable to the debtor or his wife. A document submitted to the trustee on March 28, 1989, by the debtor, which is a reconstructed spreadsheet showing certain expenses, shows disbursements to cash and Denise Ridley in 1986 in the amount of $58,638.00. Checks written by Andre Ridley on the account of The Good News, Inc. also show disbursements to cash, Andre Ridley and Denise Ridley, in 1986. The reconstructed summary sub-mitted by Andre Ridley to the trustee on March 28, 1989, after the present litigation was pending, reveals disbursements in 1986 of $226,333.00. In 1987, the debtor apparently disbursed at least $219,580.35, the amount set forth in his reconstructed spreadsheet. Checks made out to cash, the debtor or his wife, in 1987, totalled $84,800.00.

No records of any kind exist with regard to income from the sale of plants. No sales tax returns were ever filed. A document submitted by the debtor at trial (which was not available to the trustee until two days before the trial) indicated the debtor spent $23,864.00 in 1987 for plants to be re-sold. In 1986, the purchase price of the plants was apparently $15,765. As noted above, no records were kept of the proceeds from the sales of these plants. The debtor has not explained the use of the substantial amount of cash including the cash disbursements described above and cash income from the sale of plants except in general unsubstantial terms, such has that he used the cash to pay for materials to build the houses. Immediately prior to trial, the debtor engaged an accountant to attempt to reconstruct the debtor's business records. In doing so, however, the accountant was forced to give estimates regarding cash flow, equipment rental, automobile expense, etc. 11 U.S.C. § 727(a)(3):

> (3) The debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case. 11 U.S.C. § 727(a)(3).

■ The purpose of the Bankruptcy Code ("Code") § 727(a)(3), which precludes the discharge of a debtor who has failed to keep or preserve adequate recorded information pertaining to the debtor's business transactions and financial condition, is to insure that dependable information be supplied to the trustee and to creditors upon

which they can rely in tracing the debtor's financial history; the trustee and creditors are entitled to complete and accurate information showing what property has passed through the debtor's hands during the period prior to bankruptcy. *In re Mascolo*, 505 F.2d 274, 278 (1st Cir.1974), quoting *In re Slocum*, 22 F.2d 282, 285 (2nd Cir.1927). The production of appropriate records is the quid pro quo for the debtor's relief from substantially all financial obligations through a discharge in bankruptcy. 11 B.R. 487, 489 (Bkrtcy.D.Mass.1981).

Under both the current Code § 727(a)(3) and its immediate statutory predecessors, there is no requirement that the trustee prove intent to conceal on the part of the debtor. *See, e.g. In re Esposito*, 44 B.R. 817 (Bkrtcy.S.D.N.Y.1984) (holding that intent, while inferred, is not a requisite element to be specifically proven for denial of discharge under § 727(a)(3).) *See* also *White v. Schoenfeld*, 117 F.2d 131 (2nd Cir.1941) (providing that no "moral obliquiy" need be shown.).

> Complete disclosure is in every case a condition precedent to the granting of the discharge, and if such a disclosure is not possible without the keeping of books or records, then the absence of such amounts to that failure to which the act applies.

*In re Underhill*, 82 F.2d 258, 259–260 (2nd Cir.1936).

■ Absent a showing of exceptional circumstances, such as that the debtor's business is somehow so small and uncomplex that books and records would not be kept in the normal course of affairs, a proper record of financial condition and recent business transactions is required. *Matter of Esposito*, 44 B.R. 817, 827 (Bkrtcy.S.D.N.Y.1984) ("It is not the intent of the Bankruptcy Code to inflict upon the trustee the burden of sifting through every shred of remaining records, no matter how great the cost, in the hope of piecing together a debtor's financial condition."). Cf. *Matter of Horton*, 621 F.2d 968 (9th Cir.1980) (discharge denied for failure to keep sufficient records where debtor dealt almost exclusively in cash during all of his business

transactions, leaving little or no verifiable records, and was unable to show how his salary was spent). Neither a lack of education nor a lack of training in business management will generally be seen as a justification for the failure to keep adequate books and records, where such books and records would normally be kept as a part of the debtor's trade or business. *Matter of LeFebvre*, 1 B.R. 534 (Bkrtcy.M.D.Fla.1979).

Where a debtor has failed to keep adequate records of his business transactions, it will not be a defense that, after the trustee has filed a complaint objecting to discharge, the debtor hires an accountant to reconstruct the debtor's records based primarily upon the accountant's estimates of the debtor's business activities. *See, e.g., In re Libowitz*, 53 F.2d 132 (S.D.N.Y. 1931), where a federal court denied discharge when the debtor failed to maintain contemporaneous records and failed to provide documentary evidence regarding substantial business and gambling losses, other than to provide estimates prepared, post-petition, of cash flow, etc., which were almost entirely unsupported by corroborative books, records, and other documents. *See* also *In re Devine*, 11 B.R. 487, 489 (Bkrtcy. D.Mass.1981) ("The Trustee and creditors are entitled to rely on more specific financial data than a self-serving memory from which they can evaluate the debtor's financial conditions and verify the debtor's statements.").

The debtor purchased plants for resale to the public in 1986 and 1987. He paid in excess of $15,000 for such plants in 1986 and $23,000 in 1987 to purchase these plants from a wholesale distributor. The debtor did not keep or produce *any* records of proceeds from the resale of these plants.

The problems of inadequate records noted above are compounded by the co-mingling of personal and corporate funds. The financial affairs of The Good News, Inc. and Andre Ridley are hopelessly intertwined in the time period of 1986–1988. As the Court noted in *In re Harron*, 31 B.R. 466, 470 (Bkrtcy.D.Conn.1983), the factors

that make the lack of adequate records more severe include the following:

"the practice of utilizing and interchanging a variety of corporate and personal checking accounts, the co-mingling of corporate and personal funds, [and] the vague, suspicious, and undocumented loan arrangements."

In this case, all of these factors combine to cast the lack of adequate records in even sharper relief.

**11 U.S.C. § 727(a)(4):**

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

The trustee met with the debtor at a 341 meeting on October 17, 1988. The debtor did not produce *any* business records. In December, 1989, the trustee sought permission to extend the time for objecting to discharge, based in part on the fact that the debtor had still not produced any books or records. (See docketed motion of trustee). On January 9, 1989, the trustee met with counsel for the debtor, (Joseph Foley), further confirming the need to obtain all business records. As a result of that meeting, the trustee understood that the debtor would produce records at a 341 meeting on January 12, 1989. At the 341 meeting on January 12, 1989, the debtor did not produce *any* business records or documents. At that meeting, the debtor, with counsel present, refused to produce any business records, stating that he believed that the trustee would try to use them against him. The testimony concerning this deliberate refusal to produce records was not contradicted by the debtor, who testified in this matter.

On January 27, the trustee having been provided with absolutely *no* business records of any kind by the debtor, filed the complaint objecting to discharge. On February 2, 1989, at a pre-trial hearing, the debtor was directed by the Court to turn over all of his business records to the trustee. On March 28, 1989, the debtor produced some records, but four days later, on April 1, 1989, he took possession of all of those documents. On April 12, 1989 at a further pre-trial, the Court again ordered the debtor to produce all records to the trustee, with a deadline of April 18, 1989. On April 19 and 20, the trustee received copies of certain checks (See Plaintiffs' Exhibits 1 and 2, which are some of those checks) and reconstructed spreadsheets (See Plaintiffs' Exhibits 5 and 6). No other documents were provided at that time. No other documents were provided or made available to the trustee until two business days before the trial, on Friday afternoon, June 21, 1989, when certain additional documents, including certain receipts and recently reconstructed documents prepared by an accountant were made available for inspection.

In the consolidated case, the plaintiffs, Wortman, had served a Request for Production of Documents upon the debtor in January, 1989. A Motion to Compel Production was allowed on March 15, 1989, with the documents to be produced by March 24, 1989. The only documents ever produced by the debtor were those provided to the trustee, as described above. "The trustee should not have to be chasing debtors into Court in order to gain their cooperation." *In re Bianco,* 5 B.R. 466, 468 (Bkrtcy.D.Mass.1980).

Pursuant to Bankruptcy Code §§ 521(4) and 727(a)(4)(D), a debtor has the affirmative duty to surrender to the trustee all recorded information relating to the property of the estate, and is also obligated to cooperate with the trustee by, among other things, providing the trustee with all relevant documents and papers. *Broad Nat. Bank v. Kadison,* 26 B.R. 1015 (Bkrtcy.D.N.J.1983); *In re Pioch,* 235 F.2d 903, 906 (3rd Cir.1956). The federal courts have consistently interpreted this duty to mean, in part, that a debtor will not be entitled to a discharge in bankruptcy if he intentionally withholds records, books, documents, or other papers relating to the debtor's property or financial affairs. *In re McDonald,* 25 B.R. 186, 189 (Bkrtcy. N.D.Ohio 1982) (Bankruptcy Court for the

Northern District of Ohio holds, *inter alia,* that a debtor does not have an inherent right to a discharge in bankruptcy and can be refused one for withholding recorded information from the trustee).

All books and records which are material to the proper understanding of the debtor's financial condition and recent business transactions are within the scope of the requirements of § 727(a)(4)(D). Thus, when the debtor fails to provide records which are necessary for the trustee to properly understand the debtor's financial condition and recent business transactions, a discharge will be denied. *Matter of Esposito,* 44 B.R. 817 (Bkrtcy.S.D.N.Y.1984). In this case, the debtor intentionally and deliberately withheld documents. He stated at the 341 meeting on January 12, 1989 that he refused to provide the documents and that he believed the trustee might use the documents against him.

The debtor failed to reveal in the Statement of Affairs, specifically as in answer to question # 7, asking for bank accounts in existence over the two years prior to filing the existence of three accounts.

Andre Ridley, d/b/a Mass. Sand & Gravel, in the First Service Bank Account No. 06–80603736; Andre Ridley, d/b/a Andre Associates, in the Mutual Bank; and an account in the 1–C Credit Union. Counsel for the debtor, in his brief, attempts to minimize this omission as unimportant because of low balances, but that begs the issue. The First Circuit upheld the denial of a discharge when the accounts were minimal or closed, since they are an essential link in tracing the debtor's financial history. It is not for the debtor to pick and choose. Discharge is a privilege, not a constitutional right, and the trustee and creditors are entitled to full and complete disclosure. *In re Mascolo,* 505 F.2d 274 (1st Cir.1974). Counsel attributes the omission to mere forgetfulness, but that seems unlikely since one of the accounts was opened a mere three months prior to filing. The debtor did not have so many records and accounts that three would be forgotten.

Bankruptcy Code § 521(4) imposes an affirmative duty on the part of the debtor both to surrender to the trustee all recorded information relating to the property of the estate and, also, to cooperate with the trustee by providing all relevant documents and papers. Given this clear statutory mandate, it is not sufficient for the debtor to deliver such records only in response to formal discovery requests, i.e., for the debtor to force the trustee to file an objection to discharge complaint in order to obtain necessary records.

11 U.S.C. § 727(A)(5):

> (5) The debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

The debtor has not provided the trustee with adequate documentation concerning a number of checks drawn upon the debtor's construction account on a number of separate occasions in amounts of approximately $60,000 in 1986 and $85,000 in 1987. The cancelled checks provided by the debtor indicated only that the funds were drawn to "cash" or made payable to the debtor or his wife, nor has the income from the gravel, plant, or home sale been documented or explained in any but the most general terms.

An objection to discharge may be sustained even if the debtor's failure to explain is not accompanied by fraudulent intent. *In re Martin,* 698 F.2d 883 (7th Cir.1983); *McBee v. Sliman,* 512 F.2d 504 (5th Cir.1975).

A satisfactory explanation of diminution of available assets must consist of more than vague or indefinite references, evidence or explanations, or an uncorroborated hodgepodge of financial transactions. *Baum v. Earl Millikin, Inc.,* 359 F.2d 811 (7th Cir.1966). The debtor will be required to produce some kind of direct, specific evidence in order to defeat an objection based upon failure to explain a loss of assets. *McBee v. Sliman,* 512 F.2d 504 (5th Cir.1975); *see* also *In re Hirsch,* 36 B.R. 643 (Bkrtcy.S.D.Fla.1984); *Baum v. Earl Millikin, Inc.,* 359 F.2d 811 (7th Cir. 1966). Therefore, discharge will be denied where the debtor makes only a vague evidentiary showing that the missing assets

involved have been used to pay unspecified creditors, or where the debtor fails to provide corroborative documentary evidence to confirm his explanation. *See In re McNay,* 58 F.Supp. 960 (D.C.Cal.1945); *see also Minella v. Phillips,* 245 F.2d 687 (5th Cir. 1957).

Moreover, a debtor will be denied discharge when the only explanation he offers concerning a loss of assets comes by way of a "jumble of vague, unassorted memoranda, checks, bank statements, and bills." *Jackson v. Menick,* 271 F.2d 806, 809 (9th Cir.1959). In general, undocumented explanations will not be held satisfactory. *In re Chalik,* 748 F.2d 616 (11th Cir.1984); *Matter of Reed,* 700 F.2d 986 (5th Cir.1983).

Discharge is denied, under 11 U.S.C. § 727(a)(3), the debtor having failed to keep records from which the trustee could reasonably be expected to trace the debtor's finances considering the debtor's sources of income and what should be expected under all of the debtor's circumstances. Independently, discharge is denied for a knowing and fraudulent withholding of records, under 11 U.S.C. § 727(a)(4)(D), and discharge is denied for failure to explain loss of assets under 11 U.S.C. § 727(a)(5).