**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No. WW-17-1067-KuFB |
| | ) | |
| ZHEN CHEN, | ) | Bk. No.  16-10632-TWD |
| | ) | |
| Debtor. | ) | Adv. No. 16-01166-TWD |
| _____ | ) | |
| ZHEN CHEN, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | M E M O R A N D U M* |
| | ) | |
| UNITED STATES TRUSTEE, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on September 28, 2017
at Seattle, Washington

Filed - October 17, 2017

Appeal from the United States Bankruptcy Court
for the Western District of Washington

Honorable Timothy W. Dore, Bankruptcy Judge, Presiding

_____

Appearances:     Glyn E. Lewis argued for appellant; Hilary B. Mohr argued for appellee.

_____

Before:  KURTZ, FARIS, and BRAND, Bankruptcy Judges.

---

     * This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-1-

Appellant, chapter 7[1] debtor Zhen Chen, appeals from the bankruptcy court's summary judgment in favor of the United States Trustee (Trustee) denying Chen's discharge under § 727(a)(3). Because the record shows that there are no genuine disputes of material fact, we AFFIRM.

## I. FACTS

**A. Chen's Background**

Chen lived and worked in China for most of her life. Her native language is Mandarin. She attended college in Beijing and received her degree in Foreign Trade in 1989. From 1989-2000, Chen worked as an importing agent in China. In 2000, Chen moved to the United States.

The record is spotty regarding her employment after her move. In 2010, she earned a bookkeeping certificate from Bellevue Community College in Bellevue, Washington. In 2014, Chen and a colleague formed an import/export business called BTS Trading, LLC (BTS) of which Chen owned ten percent. That same year, Chen worked for a small Chinese company part-time and a restaurant for two months.

Chen was unemployed in 2015 and had no income. During 2014 and 2015, Chen received large wire transfers into her bank accounts from Chinese nationals. Since February 2016, Chen has been employed by Richful, LLC as a bookkeeper. In that position, she interfaces with an accountant for payroll and tax

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

-2-

return preparation.

According to the record, Chen was a high stakes gambler. Chen incurred significant debt related to her gambling.

**B.    Bankruptcy Events**

Chen filed a chapter 7 petition in early 2016.  Her amended Schedule E/F shows $417,090.77 in non-priority unsecured debt consisting primarily of gambling debt owed to casinos in Las Vegas and Washington.  Her initial Statement of Financial Affairs (SOFA) showed that she had lived at 35th Place, Sammamish, Washington (35th Place Property) from January 1, 2009 to May 1, 2015.  Chen also disclosed that two months before her bankruptcy filing, she transferred her title interest in real property located on 201st Court, Sammamish, Washington (201st Court Property) to her sister for zero dollars because her sister had provided all the funds for the purchase of the property.  The SOFA showed that Chen was a member of BTS, but she indicated that the company had "never done business." Finally, Chen disclosed $295,000 in gambling losses.

Shortly after Chen filed her petition, Trustee sought and obtained an order directing Chen to submit to examination and produce documents under Rules 2004 and 9016.  Trustee issued a subpoena to Chen seeking production of documents pertaining to her financial condition including, among others:

(1) copies of financial statements, balance sheets, or loan or credit applications prepared or submitted by Chen or an entity she controlled for the two years prior to her bankruptcy (Requested Period);

(2) tax returns for tax years 2012 through 2014;

(3) statements for any type of bank or financial account Chen controlled for the Requested Period, and

related documents (e.g., canceled checks, check registers, wire transfers, deposit slips);

(4) copies of cashier's checks she or an entity she controlled obtained during the Requested Period; and

(5) all documents related to real property in which Chen had an interest in the past five years, specifically including her interest in two parcels of residential real property – the 201st Court Property and the 35th Place Property.

Chen produced some documents in response, but many were missing. She later produced more documents, but several were duplicative and others were still missing.

In June 2016, Trustee conducted Chen's 2004 exam and gave her a further opportunity to produce documents pertaining to: (1) a line of credit (LOC) on the 35th Place Property and its sale that occurred within the year preceding the petition, including the disposition of the sale proceeds; (2) Chen's joint purchase of the 201st Court Property with her sister, also in the year preceding the bankruptcy; (3) Chen's disposition of $30,000 in proceeds from the sale of a 2013 Lexus about three months before she filed bankruptcy; and (4) millions in unexplained deposits and withdrawals into and out of Chen's bank accounts in the two years preceding her petition.

After her exam, Chen made her largest production of the requested documents, but still many were missing. She also amended her SOFA to show the sale of the 35th Place Property for $672,000, and disclosed that the sale proceeds were used to pay back her gambling debt to casinos in Las Vegas and to pay the mortgage. She further disclosed that she had transferred approximately $30,000 in sale proceeds from the Lexus to her friend, Ms. Yin, for repayment of a gambling loan. In the

-4-

amended SOFA, Ms. Chen reflected her gambling losses as $400,000. Finally, Chen made adjustments to her income from employment for 2015, changing her gross income from $15,000 to $0.00 and increasing her 2014 gross income from $15,000 to $20,000. She also showed gross income of $15,000 from gambling for the year 2014.

Following Trustee's repeated failed attempts to obtain documents relating to the various transactions, Trustee filed an adversary complaint against Chen seeking to deny her discharge under § 727(a)(2)(A), (a)(3), (a)(4), and (a)(5). After Chen answered the complaint, Trustee filed a motion for summary judgment (MSJ) on the § 727(a)(3) claim, alleging that there were significant transactions (two property sales, a vehicle sale, and the flow of millions of dollars into and out of Chen's accounts in the two years before the petition date) that were undocumented or inadequately documented to the extent that parties in interest could not ascertain her financial condition as of the petition date.

In support of the MSJ, Trustee submitted the declaration of bankruptcy analyst Young-Mi Petteys (Petteys). Attached to Petteys' declaration were bank statements, a two-page ledger from Chen regarding her draws and payments on the LOC for the 35th Place Property, and communications regarding requests to Chen for the further production of documents.

Trustee also submitted the declaration of Hilary Mohr, the trial attorney for Trustee in this matter. Attached to Ms. Mohr's declaration were the transcript of Chen's 2004 exam and various communications regarding Ms. Mohr's efforts to

obtain the relevant documents.

Based on Chen's testimony and documents that were produced, Petteys' declaration set forth the four areas where it was impossible to trace, verify, or otherwise piece together Chen's financial condition:

**Unexplained deposits and withdrawals**: Relying on the bank statements produced, Petteys declared that there were $2,329,000 in unexplained deposits and $2,244,000 in unexplained withdrawals from Chen's accounts for the years 2014 and 2015.

**201st Court Property**: Relying on Chen's testimony and the documents produced, Petteys declared that she was unable to verify the source of the funds used to purchase the 201st Court Property. Chen testified that the 201st Court Property belonged to her sister and that Chen was on title only for her sister's convenience because her sister lives in China. Chen also testified that after her sister learned of Chen's gambling habits, her sister requested that Chen quitclaim the property to her. Chen did so two months before she filed her petition. Although Trustee requested that Chen provide all documents relating to the purchase of the 201st Court Property, she produced documents in draft form only. The draft deed of trust identified Chen as a "co-borrower" on the loan to purchase the 201st Court Property. She did not produce a final HUD-1 statement for the purchase of the 201st Court Property or provide final loan or security documents.[2]

---

[2] There is no explanation in the record why Chen did not attempt to obtain final documents pertaining to the sale or, if

(continued...)

-6-

**35th Place Property:** Based on Chen's testimony and the documents produced, Petteys was unable to confirm the amount Chen received from the sale of this property or the ultimate disposition of the sale proceeds. Chen testified that she purchased this property in 2009 with funds from her father. In August 2014, Chen obtained the LOC from East West Bank secured by the property and began drawing on the credit. In total, she drew $669,000 on the LOC. Chen testified that she drew on the note to gamble and made payments on the note from gambling winnings. She also testified that she used the money to make loans to friends for gambling, and paid on the note from what they repaid her.

Chen produced no documents showing what she did with the funds drawn on the LOC, and admitted that the loans to her friends were not documented in any way. Chen testified that all of the credit draws went into her East West Bank checking account. However, based on a two-page ledger produced by Chen, Petteys could trace approximately $447,000 of the $669,000, leaving $220,000 which could not be accounted for because the draws did not correspond to any deposits in her bank accounts.

Finally, Chen sold the property in 2015 for $672,000. However, Chen did not provide any documentation showing the disposition of the sale proceeds. From what Petteys could piece together, at the time of the sale Chen owed over $300,000 on the LOC. On July 13, 2015, $313,000 was wired into Chen's U.S. Bank

---

[2](...continued) she did, why she could not obtain them.

account. Chen testified that she believed the wire was the net proceeds from the sale after full payment of the East West Bank mortgage. The following day, Chen made two wire transfers for $118,000 and $163,000. She testified that these transfers were to repay gambling debts. However, she produced no records to show who received the wire transfers. Chen also did not produce a final HUD-1 settlement statement or other document from which the final sale proceeds or mortgage payoff from the sale of the 35th Place Property could be verified.[3]

Petteys declared that the U.S. Bank statement was the only document to support Chen's claim that she received $313,000 from the sale of the 35th Place Property, and that $118,000 and $163,000 went to pay back casinos. However, using this bank statement alone, Petteys concluded that she was unable to confirm the source of the $313,000, or to confirm the recipients of the two outgoing wire transfers.

**Sale of the 2013 Lexus and disposition of sale proceeds**: In October 2015, Chen sold a 2013 Lexus for $33,500. Chen testified that she sold the 2013 Lexus to repay a gambling debt to a friend, Ms. Yin, in the amount of $30,000. The only document she produced about the sale of the 2013 Lexus is a copy of her deposit slip which includes a copy of a check. The check is from Lexus of Bellevue for $33,500 and dated October 25, 2015. According to Chen's U.S. Bank statement, she deposited

---

[3] Again, there is no indication in the record that Chen attempted to obtain the final HUD-1 settlement statement or other closing documents or that she contacted the casinos to obtain documents showing that they received the wire transfers she testified to.

$30,000 four days later.  Petteys declared that she could not find a corresponding withdrawal for $30,000 and therefore it was unclear if Chen's friend was ever owed the money or repaid.

Chen responded to the MSJ by accusing Trustee of engaging in "creative accounting," misleading arguments, and outright falsehoods.  Chen contended that Trustee used "creative accounting" to come up with $3.2 million that Chen allegedly received over two years.  Chen argued that she would withdraw money to gamble and then deposit the same money the next day.

Chen also asserted that it is undisputed that she lost money gambling and was a gambling addict.  According to Chen, a "reasonable person" standard should not be applied to her because gambling against the odds is an inherently unreasonable activity.  Finally, Chen contended that Trustee was using disputed facts to support her MSJ and therefore summary judgment should not be granted.

In her declaration, Chen explained that the only money she received from China were gifts from her mother and sister who, together, transferred approximately $900,000 to her from 2013 to 2015.  Chen stated that she could not receive the money directly from her sister because of Chinese currency controls and therefore her sister's friends would send Chen the money.  Chen further declared that she sold the 35th Place Property to pay off her gambling debt to casinos in Las Vegas and that only her sister had provided funds for the purchase of the 201st Court Property.  She also explained that she used $30,000 in proceeds from the sale of her Lexus to pay back a personal loan from one of her gambling friends, Ms. Yin.

-9-

Finally, Chen stated that she did not keep all the documents she received from the casinos showing her gambling losses because it was "too depressing" for her to think about. In addition, she did not document personal loans made to her gambling friends because they trusted each other: "To ask for documentation among such close friends may have been considered insulting." Chen further declared that her native language was Mandarin and she did not understand all the English language documents that she has, such as the purchase and sale documents for the 201st Court Property and 35th Place Property.

The bankruptcy court heard the matter and stated its ruling granting Trustee's MSJ on the record. On December 23, 2016, the court entered the order granting Trustee's MSJ and denying Debtor's discharge on the basis of § 727(a)(3).

Chen did not file a notice of appeal by the January 6, 2017 deadline. On January 20, 2017, Chen filed a timely motion to extend the time to file an appeal from the order based on excusable neglect — Chen's counsel thought there were 30 days to file an appeal instead of 14 days. See Rule 8002(d)(1)(B). Trustee opposed. The bankruptcy court granted Chen's motion and extended the time to appeal to March 3, 2017. Chen filed her notice of appeal on March 2, 2017.

## II. JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(J). We have jurisdiction

under 28 U.S.C. § 158.[4]

## III.  ISSUE

Did the bankruptcy court err when it granted summary judgment and denied Chen's discharge under § 727(a)(3)?

## IV.  STANDARD OF REVIEW

We review a summary judgment de novo. Caneva v. Sun Communities Operating Ltd. P'ship (In re Caneva), 550 F.3d 755, 760 (9th Cir. 2008). We thus independently conduct our review giving no deference to the bankruptcy court's conclusion. Roth v. Educ. Credit Mgmt. Agency (In re Roth), 490 B.R. 908, 915 (9th Cir. BAP 2013). Viewing the evidence in the light most favorable to the non-moving party, we must determine whether there are any genuine disputes of material fact that remain for trial and whether the prevailing party is entitled to judgment as a matter of law. New Falls Corp. v. Boyajian (In re Boyajian), 367 B.R. 138, 141 (9th Cir. BAP 2007).

## V.  DISCUSSION

The court shall grant summary judgment when the pleadings, depositions, and admissions on file, together with the affidavits, show that there are no genuine disputes as to any material fact and the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Credibility determinations, the weighing of the evidence, and

[4] The bankruptcy court's order contained a Civil Rule 54(b) certification thereby making the order final for purposes of this appeal. There is no separate judgment. See Rule 7058, making Civil Rule 58 applicable in adversary proceedings. However, the separate judgment requirement is not jurisdictional and can be easily waived as occurred here. See Bankers Tr. Co. v. Mallis, 435 U.S. 381, 384-85 (1978).

-11-

the drawing of legitimate inferences from the facts are jury functions, not those of a judge when he is ruling on a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

After the moving party has met her initial burden of proof, the nonmoving party must produce evidence to support her claim or defense. Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1103 (9th Cir. 2000). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. However, "[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." FTC v. Publ'g Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997). "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." Nissan Fire & Marine, 210 F.3d at 1103.

For purposes of summary judgment, "the substantive law will identify which facts are material." Anderson, 477 U.S. at 248. The substantive law at issue in Trustee's MSJ is § 727(a)(3). The statute directs the bankruptcy court to deny a debtor's discharge when:

> the debtor has . . . failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case.

Section 727(a)(3) places an affirmative duty on the debtor to keep and preserve records accurately documenting his or her

-12-

business and personal affairs. See In re Caneva, 550 F.3d at 762. Requiring accurate documentation "removes the risk to creditors of 'the withholding or concealment of assets by the bankrupt under cover of a chaotic or incomplete set of books or records.'" Id. (quoting Burchett v. Myers, 202 F.2d 920, 926 (9th Cir. 1953). We strictly construe this exception to discharge in favor of the debtor's fresh start. Id.

To succeed on its objection to discharge under § 727(a)(3), Trustee must show "'(1) that [Chen] failed to maintain and preserve adequate records, and (2) that such failure rendered it impossible to ascertain [Chen's] financial condition and material[5] business transactions.'" Lansdowne v. Cox (In re Cox), 41 F.3d 1294, 1296 (9th Cir. 1994) (quoting Meridian Bank v. Alten, 958 F.2d 1226, 1232 (3d Cir. 1992)). Generally, records are sufficient if they allow the court and creditors to trace the debtor's financial dealings. In re Ridley, 115 B.R. 731, 733 (Bankr. D. Mass. 1990).

Once Trustee met her initial burden showing these elements, the burden of proof then shifted to Chen to justify the inadequacy or nonexistence of the records. In re Caneva, 550 F.3d at 761. The issue of justification is decided under an objective standard and depends on what a normal, reasonable person would do under similar circumstances. Id. at 763 "'Justification for [a] bankrupt's failure to keep or preserve

---

[5] The bankruptcy court correctly observed that although the language in § 727(a)(3) does not require the unexplained transactions be material, the Ninth Circuit added a materiality requirement in both In re Cox and In re Caneva.

-13-

books or records will depend on . . . whether others in like circumstances would ordinarily keep them.'").

In applying this objective standard, the court may consider: (1) the debtor's education, experience, and sophistication; (2) the volume of the debtor's business; (3) the complexity of the debtor's business; (4) the amount of credit extended to the debtor in his business; and (5) any other circumstances that should be considered in the interest of justice. Meridian Bank, 958 F.2d at 1231. Generally, "when a debtor is sophisticated and carries on a business involving substantial assets, 'creditors have an expectation of greater and better record keeping.'" In re Caneva 550 F.3d at 762 (quoting In re Juzwiak, 89 F.3d 424, 428 (7th Cir. 1996)).

Finally, "[o]ral testimony is not a valid substitute or supplement for concrete written records." In re Juzwiak, 89 F.3d at 429.

> It is not enough that Debtor merely recite from records ostensibly 'kept in his head' and detail from memory what transactions he engaged in and how the funds were dissipated. Records of substantial completeness and accuracy are necessary in order that they may be checked against Debtor's oral statements. Creditors, in other words, are not required to rely on a debtor's oral representations concerning these matters without also having some independent means of substantiating such representations.

Id.; see also Meridian Bank, 958 F.2d at 1233 ("Vague and indefinite explanations of losses that are based upon estimates uncorroborated by documentation are unsatisfactory."); McBee v. Sliman, 512 F.2d 504, 506 (5th Cir. 1975) ("Where a debtor's explanation for inadequate records is gambling, the debtor must provide direct or circumstantial evidence to show that money was

-14-

in fact lost and that the gambling explanation was not merely a ruse to evade creditors.").

The bankruptcy court used the above-referenced standards and so do we in assessing the record before us. It shows that Chen dealt with substantial sums of cash keeping little or no verifiable records. Although Chen produced some documents, there are no genuine disputes of material fact that the records produced were inadequate. Trustee could not verify the details of the transactions discussed or trace Chen's financial dealings. Petteys' uncontroverted declaration showed:

• Chen received and transferred substantial sums of money to third parties for which she provided no documentation. The transfer of substantial amounts of money to a third party, with no documentation, establishes a prima facie violation of § 727(a)(3). In re Caneva, 550 F.3d at 762. Although Chen disputed Trustee's contention that millions of dollars flowed into and out of her bank accounts, Chen admitted that approximately $900,000 had been received from family members - either directly or indirectly - in the roughly two years prior to her bankruptcy. The bankruptcy court properly concluded that "no reasonable trier of fact could find that the transfer or other expenditure of $900,000 in those two years by an individual debtor with very modest income and few other assets was not material." Accordingly, even if Chen received the $900,000 versus the millions alleged by Trustee, the bank statements show large withdrawals of cash. Chen provided no documentation regarding how she used the money.

• Chen admitted to frequently borrowing and loaning money

-15-

to friends for gambling.  She conceded that she had no documentation for any of the transactions.

● Chen admitted that she failed to keep all documents that would show her gambling expenses.[6]

● Chen testified during her 2004 exam that she used $30,000 in proceeds from the sale of her 2013 Lexus to repay a gambling debt to Ms. Yin.  Yet, she provided no documentation of any debt owed to Ms. Yin or that she repaid it with the sale proceeds.

● The documents produced regarding Chen's potential interest in the 201st Court Property were inadequate.  Although Chen attached some documents showing the down payment was made by her sister, she did not produce a final HUD-1 or documents to show where approximately $86,000[7] in deposits, in addition to the down payment, came from.  Although Chen tried to explain the purchase transaction, Chen's oral testimony was not a valid substitute or supplement for the requested records. In re Juzwiak, 89 F.3d at 429.

● Chen's documents pertaining to the sale of her home on 35th Place and the disposition of the sale proceeds were also inadequate.  She did not provide the final HUD-1 closing

---

[6] Federal regulations require casinos to maintain extensive records about transactions with their customers. See, e.g., 31 C.F.R. § 1021.410.  Chen never explained why she failed to obtain - or even request - records from the casinos at which she gambled.

[7] Attached to Chen's reply brief is a declaration from her attorney with a copy of a $86,309.00 check written on Chen's account to Toll WA and allegedly returned to Chen.  We do not consider this evidence which is presented for the first time on appeal. See Cold Mountain v. Garber, 375 F.3d 884, 891 (9th Cir. 2004).

-16-

statement or other closing documents for the sale of her home nor did she provide documents to show how she used the net sale proceeds. Although she said she used the money she received to pay gambling debts to Las Vegas casinos, she never produced documents showing the transfer of the sale proceeds to those entities nor does the record show that she tried to obtain them.

Chen suggested in her brief opposing the MSJ that Trustee could have obtained the records regarding her payments to the casinos, but she chose not to. Trustee was not required to investigate and acquire Chen's records. Id.; Peters v. Michael (In re Michael), 433 B.R. 214, 225 (Bankr. N.D. Ohio 2010) (Under § 727(a)(3), "[a] creditor, even if they have the power to obtain the records, such as through a subpoena, is not under an obligation to do so."). It was Chen's duty to keep and preserve records and provide sufficient information.

In the end, the records produced were incomplete and raised more questions than they answered. It was impossible for Trustee or any other party in interest to ascertain any meaningful picture of Chen's financial condition. Since Trustee showed that no genuine disputes of material fact existed as to its prima facie case, the burden shifted to Chen to present evidence sufficient to show that a question of material fact did exist as to whether her failure to keep or preserve the records was justified under the circumstances of her case.

Chen submitted no evidence in opposition to the MSJ other than her declaration which repeated much of her 2004 exam testimony and contained her justifications for her failure to keep or preserve records in connection with the transactions

-17-

discussed. Chen's cursory affidavit does not create any genuine disputes of material fact.

Chen declares that "she did her best" to produce all the documents in her possession, custody and control in response to Trustee's document requests. However, her best efforts in producing the documents is not sufficient to satisfy the requirements of § 727(a)(3). In re Caneva, 550 F.3d at 763; see also Desiderio v. Devani (In re Devani), 556 B.R. 37, 43-44 (Bankr. E.D.N.Y. 2016) (debtor's assertion that he produced what was available to him in his possession is not a sufficient justification for his failure to produce financial records as he could have requested them from the relevant banks).

Chen's justifications for her failure to keep relevant and material records because "it was too depressing," "may have been considered insulting" to her friends, or "she did not understand all the documents" due to a language barrier, fail as a matter of law for several reasons. First, Chen's justifications are simply bald assertions without any specifics. "[F]actually unsupported claims [and] defenses" are insufficient to withstand summary judgment." Harrington v. Simmons (In re Simmons), 810 F.3d 852, 859 (1st Cir. 2016) (citing Celotex, 477 U.S. at 323); see also Publ'g Clearing House, Inc., 104 F.3d at 1171. Second, her justifications do not address all the records that she failed to keep. They do not address her failure to document how she spent the money obtained from the LOC on the 35th Place Property and the numerous deposits and withdrawals from her bank accounts.

Third, the test for determining whether Chen has adequately

-18-

justified the inadequacy or lack of financial records is an objective one. In re Caneva, 550 F.3d at 763; see also In re Simmons, 810 F.3d at 859. It is undisputed that Chen was educated and had a grasp of business and financial matters. She worked as an import agent, earned a bookkeeping certificate, and started her business - BTS. As the bankruptcy court found, "[n]o reasonable trier of fact could conclude that a person with [Chen's] background would be justified by failing to keep records of the voluminous and large transactions, many apparently in cash, that [Chen] engaged in during the, roughly, two years prior to filing her bankruptcy case."

Last, Chen's alleged gambling addiction does not absolve her from keeping records. Indeed, since gambling earnings are "income" for tax purposes, the Internal Revenue Service requires gambling documentation, such as "[a]n accurate diary or similar record regularly maintained by the taxpayer, supplemented by verifiable documentation."[8] Person v. Dep't. of Revenue, No. TC-MD 091421D, 2011 WL 2222261 (Or. Tax Magistrate Div. June 6, 2011). Many courts have denied a debtor's discharge under § 727(a)(3) for failure to maintain gambling records.

---

[8] The court explained:

In general, the diary should contain at **least** the following information:
1) Date and type of specific wager or wagering activity;
2) Name of gambling establishment;
3) Address or location of gambling establishment;
4) Names[s] of other person(s) (if any) present with taxpayer at gambling establishment; and
5) Amount(s) won or lost.

Id. at *3.

-19-

United States Tr. v. Macway (In re Macway), No. 14-16680, 2016 WL 4039745 (9th Cir. July 28, 2016) (affirming denial of discharge where debtor failed to maintain records for his gambling activities); Dolin v. N. Petrochemical Co. (In re Dolin), 799 F.2d 251 (6th Cir. 1986) (chemical dependence and compulsive gambling did not excuse the debtor's failure to keep adequate records); United States Tr. v. Hong Minh Tran (In re Hong Minh Tran), 464 B.R. 885 (Bankr. S.D. Cal. 2012) (denying discharge where debtor provided no contemporaneous personal or casino records of his gambling wins and losses). This is the price Chen pays for seeking bankruptcy protection and the privilege of a discharge. See In re Macway, 2014 WL 3817103, at *3.

On appeal, Chen's primary argument is that the bankruptcy court erred in granting summary judgment because her credibility was at issue. Chen is mistaken. Intent is not a necessary element for the denial of discharge under § 727(a)(3). In re Cox, 41 F.3d at 1297; In re Juzwiak, 89 F.3d at 430. Trustee met her burden of showing that Chen failed to maintain and preserve adequate records such that it was impossible to ascertain her financial condition. The burden then shifted to Chen to show that her failure to keep records was justified under the circumstances of her case. Such justification is measured by an objective standard - that of a normal, reasonable person in like circumstances. As required under summary judgment standards, we accept as true (as did the bankruptcy court) Chen's justifications for her failure to keep or preserve records. Measured under objective standards, Chen's

-20-

justifications failed as a matter of law.

In sum, on this record there are no genuine disputes of material fact on the essential elements for denial of discharge under § 727(a)(3).[9]

## VI.  CONCLUSION

For the reasons stated, we AFFIRM.

---

[9] Debtor's counsel contends many of the cases cited by Trustee are distinguishable from this case.  This may well be true because Chen's justification for failing to keep or preserve the records is determined under the circumstances of her case and each debtor has unique circumstances.  Therefore, it is unnecessary to discuss in detail each of the cases cited by the parties in their briefs.

-21-