**In re HONG MINH TRAN, Debtor.**

**United States Trustee, Plaintiff,**

v.

**Hong Minh Tran, Defendant.**

**Bankruptcy No. 10–07606–LT7.**
**Adversary No. 10–90508–LT.**

United States Bankruptcy Court,
S.D. California.

Jan. 24, 2012.

888

Harold D. Thompson, Law Office of Harold D. Thompson, San Diego, CA, for Debtor/Defendant.

Haeji Hong, Office of the U.S. Trustee, San Diego, CA, for Plaintiff.

## MEMORANDUM DECISION

LAURA S. TAYLOR, Bankruptcy Judge.

Debtor Hong Minh Tran is a gambler. And if his story is true, he is a very unlucky gambler at that. The questions before this Court arise directly as a result of his gambling. Mr. Tran entered bankruptcy with significant unsecured debt. Most of this debt relates to credit card cash advances and purchases of gold bars, electronics, jewelry, and a loose gem. But, his bankruptcy schedules contain no mention of the majority of the purchased assets, and he entered bankruptcy with only $1,000.00 in cash. Mr. Tran admits that he lacks any specific records regarding the sale, loss, or fate of this personal property. Instead, he alleges that he used or sold all of these assets in a series of almost entirely undocumented transactions and then gambled away the entirety of the proceeds. Mr. Tran, similarly, has few records of his gambling losses.

The United States Trustee brings this action seeking to bar Mr. Tran's discharge under 11 U.S.C. § 727(a)(3) and (5)[1] based on the unexplained or undocumented loss of the purchased assets, the dissipation of cash advances and cash proceeds, and Mr. Tran's failure to produce adequate and appropriate records in connection therewith. Mr. Tran opposes and argues that the loss of these assets is not unexplained and that his oral report, non-contemporaneous records, and bank account and credit card statements constitute reasonable records under the circumstances.

The Court, after denying the United States Trustee's summary judgment motion and conducting a trial, concludes that a denial of discharge is appropriate. As many prior decisions discuss, neither an addiction to gambling nor a non-compulsive participation in gambling adequately explains a loss of assets. Nor does a mere reference to gambling justify an absence of reasonable records. But more importantly

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

here, records are not adequate and reasonable and an explanation is not sufficient, when a debtor sells significant assets to fund his gambling, fails to maintain records in connection therewith, and thereby deprives his creditors not only of the ability to verify his explanation, but, more importantly under the facts of this case, of the ability to pursue bankruptcy recovery actions of apparent merit and probable collectability.

## FACTS [2]

*General Background.*

Mr. Tran holds an associate degree from Grossmont College in math. In addition, he successfully completed several courses at the University of California at San Diego. He currently works as a machine operator and earns a gross monthly income of $3,171. Neither Mr. Tran's schedules, nor the testimony in this case, suggest that he enjoys other regular income. Consistent with this is the stipulated fact that he earned a gross income of $30,000 in 2009 and $34,000 in 2008.

Mr. Tran's Schedule J evidences that he lives modestly and incurs regular expenses in an amount slightly less than his net take home pay.

Mr. Tran initiated his chapter 7 case on May 1, 2010.

*Mr. Tran's Unsecured Debt.*

Notwithstanding this relatively modest income, Mr. Tran amassed significant unsecured debt. His schedules disclose a total of $135,700 in unsecured debt that, with the exception of an obligation of $1,600 in connection with a cell phone contract, is all the result of credit card purchases and advances.

Mr. Tran's credit card transactions included acquisition of assets and cash as follows:

a. From August 2009 through November 2009, Mr. Tran wrote three checks to himself in the total amount of $24,700, which, according to the Chase credit card statements, consisted of the following checks:

i. $10,800 on or about August 21, 2009 from the account ending in 9288;

ii. $6,900 on or about October 9, 2009 from the account ending in 3800; and

iii. $7,000 on or about November 13, 2009 from the account ending in 2813.

b. From December 2009 through March 2010, Mr. Tran incurred credit card charges for jewelry or at jewelry stores in the total amount of $44,400.93, consisting of the following:

i. $13,001 on his American Express account in December 2009;

ii. $1,203.08 on his Macy's account ending in 4460 in December 2009;

iii. $6,927.11 on a Jared account in December 2009;

iv. $5,500 on a GE Money account in December 2009;

v. $7,506.95 on a Robbins Brothers account in December 2009;

vi. $3,000 on a Bloomingdale's Visa account in January 2010;

vii. $4,586.72 on a Macy's Visa account ending in 0463 in January and March 2010; and

---

**2.** In rendering this decision, the Court assumes the accuracy of all facts in the parties' Stipulated Facts as filed with this Court on November 30, 2011 (see Dkt. No. 28.)

viii. $2,676.07 on a Bloomingdale's account in February 2010.

c. From December 2009 through February 2010, Mr. Tran incurred credit card charges for electronic items in the total amount of $2,623, consisting of the following:

i. $1,909.01 on a Fry's account in December 2009 and February 2010; and

ii. $713.99 at Fry's on a Bloomingdale's Visa account in March 2010.

*The Fate of The Assets Acquired Through Credit Card Transactions.*

Mr. Tran's schedule B listed $33,500 in personal property. This personal property included two cars and a boat valued collectively at $6,500, a $1,600 tax refund, a $13,000 401k account, and a $7,000 life insurance policy. Mr. Tran's trial testimony established that his schedule B did not list assets or cash obtained as a result of his unpaid credit card debt.

The statement of financial affairs at paragraph 8 provides the first step in an explanation for Mr. Tran's unpaid debts and bankruptcy. It indicates that during the one year period prior to his bankruptcy case, Mr. Tran lost $50,000 wagering at various casinos. And consistent with this statement, Mr. Tran provides only participation in gambling and the need to fund his gambling as the reason for the absence of significant assets from his bankruptcy estate.

Mr. Tran alleged that he used at least $10,000 of the checks he wrote to himself from Chase to gamble at various casinos. Mr. Tran also testified that he engaged in the following transactions in relation to the ten gold bars and did so in order to generate cash for gambling:

a. On December 15, 2009, he used an American Express card at Heang Yeak Hong Jewelry to purchase 5 gold bars for $9,625. He alleges that he re-sold 2 gold bars to Heang Yeak Hong Jewelry for $2,400.00 on December 16, 2009 and that he also resold 2 of the gold bars to Kim Chan Jewelry for $2,500 and 1 gold bar to Kim Thinh Hung Jewelry for $1,300. Mr. Tran's credit card statement documents the purchase, but he admits that he has no records of the resales.

b. On December 17, 2009, Mr. Tran used an American Express card at Kim Quang Jewelry to purchase 2 gold bars for $3376. He alleges that he resold these gold bars to Kim Thinh Hung Jewelry thereafter for $2,600. And, again, his credit card statement documents the purchase, but Mr. Tran admits that he lacks records documenting the resale.

c. On January 13, 2010, Mr. Tran used a Bloomingdale's Visa card at Kim Long Jewelry to purchase 2 gold bars for $3,000. Yet again, he allegedly resold the gold bars to Phuoc Loc Tho Jewelry on the date of original purchase and for cash and at a reduced price of $2,600. And yet again, a credit card statement documents the purchase, but Mr. Tran admits to a lack of records documenting the resale.

d. And finally, on March 8, 2010, Mr. Tran used his Macy's Visa card again at Kim Long Jewelry to purchase 1 gold bar for $1586.72. He alleges that he resold the gold bar to the seller on the same day, for cash, and for a reduced price of $1,200. Once more, a credit card statement

documents the purchase, but no records document the resale.

Mr. Tran's jewelry purchases include the following:

a. A $1,200 Movado watch;

b. Jewelry purchases from Jared's totaling $10,894;

c. Jewelry purchases from Robbins Brothers totaling $13,000; and

d. Another watch for $2,400.

Mr. Tran, thus, purchased almost $30,000 worth of jewelry on credit during the months leading up to his bankruptcy. His credit card statements document these purchases. But, again, Mr. Tran has no records evidencing the disposition of these items. But while records are absent, Mr. Tran does have a story. Mr. Tran alleges that he sold all this jewelry in a single transaction to a gentleman at the Commerce Casino in late February or early March of 2010. According to Mr. Tran, he took the jewelry to the casino along with his store purchase receipts and went on the hunt for a high roller—a person he described as a guy in a suit; a guy who had money; a guy who plays for big money and wagers $30,000 to $40,000 per chip. Once he located such players, he watched, waited until one cashed out his winnings, and then approached this gentleman and asked him to purchase his jewelry. He allegedly showed the gentleman both the jewelry and the receipts evidencing its value. He allegedly sold the jewelry, after minimal if any negotiation, for $10,000 cash. Mr. Tran did not obtain the name of the gentleman, and he did not obtain a receipt or other document evidencing this sale. Based on his own evidence, Mr. Tran establishes that the unknown purchaser knowingly obtained the jewelry for a third of its probable value.

Mr. Tran also bought various electronics as follows:

a. A laptop from Fry's for $1,176.65;

b. Four ITouch devices from Fry's for $800; and

c. Two ACER Netbook devices.

And, again Mr. Tran's records document the purchases, Mr. Tran has no records of the disposition of the assets, but Mr. Tran has a story and again explains that he sold these assets to various strangers for a fraction of their value and for cash. In particular, Mr. Tran alleges that:

a. He sold the laptop to an Asian man at Walmart. In this case, he waited in the computer section and approached a customer who was considering a laptop purchase. Ultimately he closed the deal by offering a bargain; he sold the laptop for $600;

b. He sold the ACERs to a stranger for $200; and

c. He sold three ITouch's at another person's yard sale for $200.

At the second 341a meeting and at trial, Mr. Tran testified that the credit card checks or cash advances were largely or entirely used for incidental purposes and for gambling. In particular at trial, he identified specific cash advances on credit cards and then related them to specific deposits into his regular checking account and specific withdrawals at ATMs that he identified as being near a particular casino. He consistently stated that the withdrawal was taken to the casino where he played poker and lost. He produced records documenting only $2,485 in gambling losses, but explained that he usually played poker and that the casinos do not provide records when a gambler plays against other pa-

trons, as is usual with poker, as opposed to playing against the house. Mr. Tran, in substance, also testified that he never won—at least on a net basis. His testimony as to each casino excursion was that he stayed and played until he lost all his money. Even if the Court believes that Mr. Tran was a net loser over the months prior to bankruptcy, the Court does not find credible that he never emerged from a casino with net winnings.

Mr. Tran ultimately prepared a non-contemporaneous outline identifying what he did with various assets that he purchased with credit cards, but he failed to produce contemporaneous records beyond credit card statements and bank records. In particular, as outlined above, he had no receipts documenting asset sales and in many cases could not even identify the purchaser.

## DISCUSSION

Section 727 provides for exceptions to an individual debtor's ability to obtain discharge of debt. In relevant part, section 727(a)(3) and (a)(5) provide:

(a) The court shall grant the debtor a discharge, unless—

. . .

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case;

. . .

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

■■■ The general purpose of section 727(a)(3) and (a)(5) is to make discharge dependent on a true presentation of the debtor's financial affairs. *Lansdowne v. Cox (In re Cox)*, 41 F.3d 1294, 1296 (9th Cir.1994) [generally discussing purpose, but involving only section 727(a)(3) ]. Notwithstanding this clearly appropriate purpose, a court considering a claim under section 727 must strictly construe the exception to dischargeability given the Bankruptcy Code's underlying goal of giving debtors a fresh start. *Id.* at 1297. But, this fresh start, though a central purpose of the Bankruptcy Code, is limited to the "honest but unfortunate debtor." *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■■■ For all objections to discharge the burden of proof is on the objecting creditor. Fed. R. Bankr.P. 4005; *Khalil v. Developers Sur. & Indem. Co. (In re Khalil)*, 379 B.R. 163, 172 (9th Cir. BAP 2007), *aff'd*, 578 F.3d 1167, 1168 (9th Cir.2009). Under section 727(a)(3), the creditor must initially establish a *prima facie* case by showing: (1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions. *Cox*, 41 F.3d at 1296 (citations omitted). After the creditor establishes a *prima facie* violation of section 727(a)(3), the burden shifts to the debtor who must justify the inadequacy or nonexistence of the records. *Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva)*, 550 F.3d 755, 761 (9th Cir.2008). Where a debtor's explanation for inadequate records is gambling, the debtor must provide direct or

circumstantial evidence to show that money was in fact lost and that the gambling explanation was not merely a ruse to evade creditors. *McBee v. Sliman,* 512 F.2d 504, 506 (5th Cir.1975). The debtor also must provide more than a conclusory statement to justify the absence of gambling records. *Caneva,* 550 F.3d at 764.

] Similarly, under section 727(a)(5) after a creditor makes a *prima facie* showing that an asset existed, but that neither it nor its proceeds can be located, the burden shifts to the debtor to provide a satisfactory explanation for the missing asset. *Comerica Bank. v. Bressler (In re Bressler),* 321 B.R. 412, 417 (Bankr.E.D.Mich.2005). A debtor's failure to offer a satisfactory explanation may be a sufficient ground for denial of discharge under section 727(a)(5). *In re Devers,* 759 F.2d 751, 754 (9th Cir.1985). And where the explanation consists of general and unsubstantiated references to gambling and related activity, the debtor fails to meet his burden. *Dolin v. Northern Petrochemical Co. (In re Dolin),* 799 F.2d 251, 253 (6th Cir.1986).

Under the facts of this case, the Court determines that Mr. Tran failed to keep reasonable records of the various transactions in which he was involved, failed to justify the lack of records, and failed to provide a satisfactory explanation for the disappearance of significant assets. As a result, both section 727(a)(3) and (a)(5) bar Mr. Tran's discharge.

*Section 727(a)(3).*

In evaluating the reasonableness of records, the Court must undertake a case by case determination. The records required for a business, as opposed to those required for a person in the conduct of day-to-day life, may be entirely differ-

ent. And the Court should take into consideration the sophistication of the debtor and the type of transactions in which the debtor engaged. For the average person, who is not engaged in sophisticated financial transactions and, instead, acts only as a consumer, tax records, wage records, bank records and credit card records may suffice.

 Here, Mr. Tran's schedules I and J evidence that his day-to-day expenses, exclusive of his gambling, were relatively modest and that his salaried income was slightly more than the amount he spent on critical life expenditures as contained in his schedule J. His credit card statements, bank account records, and income tax returns and payment advices as required by section 521(e)(2)(A) and (a)(1)(B)(iv), thus, provide adequate records exclusive of the financial transactions related to his gambling. But in connection with his gambling and as a result of his gambling, Mr. Tran engaged in atypical transactions, and the records he maintained are inadequate to document the same.

First, Mr. Tran obtained cash advances which he testifies he used to engage in gambling. Consistent with this testimony, his bank account records when coupled with his credit card statements, paint a partial picture. In the case of each cash transaction, he shows a related deposit into a general checking account. And from that checking account, he made some well-documented payments relating to these cash transactions. He withdrew the remainder of the cash advances from the bank account through ATM withdrawals. Mr. Tran provided credible testimony that he utilized cash from these transactions for gambling and gambling related incidental expenses. In particular, he was able to identify each ATM from which he obtained

cash that originated from a credit card advance and to describe the particular casino located near that ATM. This portion of his story is credible and holds together. The Court finds that the use of this cash is explained and that the documents related to this cash are adequate up to the point when Mr. Tran entered a casino.

But these cash transactions are not the only issue, and Mr. Tran's records are not reasonable in other respects. His lack of gambling win and loss records is not satisfactorily explained. The Court finds believable that records were not available from the casinos themselves given Mr. Tran's game of choice, poker. The evidence establishes that Mr. Tran played poker with other casino patrons and not against the house and that, as a result, the casino did not maintain any win and loss records. But Mr. Tran failed to personally maintain records, and the evidence in this case does not establish the typicality of Mr. Tran's records when compared against other gamblers. And even if a lack of record keeping is typical for a gambler, a complete lack of such records is not reasonable here. After observing Mr. Tran at trial and reviewing the evidence in this case, the Court finds unbelievable that Mr. Tran never left a casino with winnings. Given the almost entire absence of records, neither the Court nor creditors can be reasonably certain that Mr. Tran correctly identified his assets even if he was a net loser, he might well have had cash sufficient on occasion to buy other items. Mr. Tran does not provide an adequate justification for his intentional failure to maintain records of his gambling wins and losses. Thus, a denial of discharge under section 727(a)(3) is appropriate.

In addition, Mr. Tran funded his gambling ventures almost exclusively through his credit cards. As discussed above, he obtained cash advances which he allegedly used, among other things, to buy chips and play poker at various casinos. But Mr. Tran was also much more inventive. He also used his credit cards to obtain gold bars, jewelry, a loose gem stone, and electronics. He apparently chose these items for ease of resale. In each case, after financing the purchase of these assets at one price on credit cards, he promptly resold them at a substantial discount for cash. In the case of the sale to an unnamed Commerce Casino high roller, he sold jewelry, watches, and a loose gem for approximately one-third of the credit card purchase price. In the case of electronics, he sold electronics in the Walmart parking lot and at various yard sales, once again, at substantial discounts. Finally, in connection with the gold bars, perhaps the most puzzling transactions, he bought gold bars with credit cards and sold them shortly thereafter for cash and at a discount. Here, he at least identified the purchasers by name, but he has no receipt to document the sales. In the case of the sale to the Commerce Casino high roller and the yard sale and Walmart sales, he does not even have the names of the purchasers.

Mr. Tran argues generally that his limited records of these transactions were reasonable under the circumstances. The Court, accepting as true Mr. Tran's stories, could not disagree more. Mr. Tran admits that he did not maintain any type of contemporaneous accounting for the price received. But even if he had, such a record would be inadequate unless it contained information sufficient to identify the purchaser. If Mr. Tran's resale transactions stories are true, the chapter 7 trustee should consider fraudulent transfer actions. At the time of the transactions, Mr. Tran's credit card debt likely rendered

him insolvent. And, the purchase prices were so far below the recent acquisition costs that they strongly suggest that the price received was not reasonably equivalent to value. Mr. Tran's creditors are entitled to evaluation of and attempted recovery on account of these transactions under the California Uniform Fraudulent Transfer Act or section 548. But Mr. Tran's recordkeeping failures make recovery, or in some cases even the determination of a probable defendant, impossible or improbable.

 This failure is particularly problematic here, because it appears that if a trustee pursued the Commerce Casino high roller, such an action would be both meritorious and a likely source of recovery for the estate. Mr. Tran carefully chose this buyer and identified him as a person with substantial cash and the ability to bet tens of thousands of dollars per chip. The buyer paid Mr. Tran $10,000 in cash from a wad of bills. Where, as here, a debtor intentionally fails to keep records and, thereby, deprives his creditors of the ability to pursue recovery actions customarily available in a chapter 7 case, the debtor's burden of justifying the lack of records is a heavy one.

Mr. Tran perhaps asks the Court to infer that he could not obtain a formal receipt given the nature of the transactions. But even if that is true, Mr. Tran could have documented the transaction contemporaneously himself and, at a minimum, could have obtained the purchaser's name. Mr. Tran provides not a shred of evidence that he tried to obtain information. Instead, the evidence establishes a complete lack of any effort to maintain records as he sold assets of significant value. Thus, Mr. Tran has no satisfactory explanation for his lack of such records, and for this additional reason discharge must be denied under section 727(a)(3).

*Section 727(a)(5).*

 Mr. Tran's failure to offer satisfactory explanations for the disappearance of a significant amount of cash, tangible personal property assets, and asset proceeds also supports a denial of discharge. Mr. Tran lacks reasonable records or supporting third party evidence, so he defeats an objection to discharge under section 727(a)(5) only if his story, standing alone, constitutes a satisfactory explanation. The Court finds Mr. Tran's story incomplete, questionable in many details, and certainly far short of an explanation that meets his burden of overcoming the United States Trustee's establishment of a *prima facie* case under section 727(a)(5).

Nothing in the Code or controlling case law condemns gamblers to denial of discharge *per se.* But a gambler, just like as any other debtor, must satisfactorily explain a disappearance of assets. And, conclusory statements are not enough; there must be credible evidence of the disposition or assets. This evidence conceivably could be credible testimony from the debtor or from other percipient witnesses, even without corroborating documentary evidence. Under the circumstances here, however, Mr. Tran's testimony did not appropriately and adequately explain the disappearance of substantial assets.

Mr. Tran now seeks to discharge $135,700 in unsecured debt in his chapter 7 case. His schedules show $134,100 of the $135,700 was incurred within the year prefiling as a result of credit purchases. The evidence in this adversary proceeding establishes that approximately $72,000 of this money relates to the cash advances and asset purchases discussed in detail in

the facts above. But Mr. Tran states in his statement of financial affairs that he lost only $50,000 through gambling during the one year pre-filing. The Court spent considerable time trying to the up the loose ends of Mr. Tran's explanation, but now concludes that it cannot do so. The Court finds holes in Mr. Tran's explanation that are unplugged by evidence and widened by the general lack of credibility in Mr. Tran's evidence. For example, as discussed above, Mr. Tran testified that he never left a casino as a winner, but the Court carefully observed Mr. Tran at trial and does not find this testimony believable. His alleged $50,000 in gambling losses, when coupled with the other evidence before the Court, does not explain the significant loss of assets. The math does not work, and the Court can find no logical way to fill the holes after review of Mr. Tran's evidence and explanation.

Given the significant quantum of unaccounted for assets and cash, Mr. Tran's general lack of credibility, the incompleteness of his explanation, and the lack of any corroborating testimony or sufficiently complete other evidence, the Court finds that significant assets remain unaccounted for and that there is neither an adequate nor believable explanation for their disappearance. As a result of his failure to provide an adequate explanation for the loss of substantial assets, Mr. Tran's discharge must be denied under section 727(a)(5).

## CONCLUSION

■ Compulsive gambling is not a bar to bankruptcy discharge, but it does not lower the bar established by section 727(a)(3) and (5). *See Dolin,* 799 F.2d at 254. Mr. Tran must supply a satisfactory explanation for a deficiency of assets, and

he must maintain records that enable his creditors to reasonably ascertain his financial condition. *Id.* at 253. Mr. Tran chose to gamble, chose to finance his gambling through a series of cash withdrawals and asset purchases and sales, and chose not to maintain or obtain contemporaneous records as to the vast majority of these transactions. These choices left his creditors unpaid and make it impossible for creditors to reasonably evaluate Mr. Tran's financial condition and to pursue typical bankruptcy recovery actions. Mr. Tran bore the ultimate burden of justifying his inadequate and mostly non-existent records and explaining the loss of significant assets. He failed to meet these burdens. Thus, the Court finds a denial of discharge under section 727(a)(3) and (a)(5) appropriate.

The United States Trustee is instructed to submit a judgment consistent with this Memorandum Decision in 14 days.