FILED

APR 15 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

ORDERED PUBLISHED

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No.   CC-13-1465-TaDKi |
| ) | |
| SYED SHAHZAD HUSSAIN, ) | Bk. No.   SV 11-14331-VK |
| ) | |
| Debtor. ) | Adv. No.   SV 11-01434-VK |
| _____ ) | |
| ) | |
| SYED SHAHZAD HUSSAIN, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **OPINION** |
| ) | |
| PATRICIA MALIK; SHAFQAT ) | |
| MALIK; DAVID SEROR, TRUSTEE,* ) | |
| ) | |
| Appellees. ) | |
| _____ ) | |

Argued and Submitted on March 20, 2014
at Pasadena, California

Filed – April 15, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable William V. Altenberger,** Bankruptcy Judge, Presiding

Appearances:     John R. Habashy of the Habashy Law Firm for
appellant Syed Shahzad Hussain; Peter D. Gordon of
Peter D. Gordon & Associates for appellees
Patricia Malik and Shafqat Malik.

Before:  TAYLOR, DUNN, and KIRSCHER, Bankruptcy Judges.

---

* It appears that Mr. Seror was named solely in his capacity as chapter 7 trustee; he did not file a brief, appear at argument, or otherwise participate in this appeal.

** United States Bankruptcy Judge for the Central District of Illinois, sitting by designation.

TAYLOR, Bankruptcy Judge:

Debtor Syed Shahzad Hussain appeals from the bankruptcy court's judgment denying his chapter 7 discharge pursuant to § 727(a)(3).[1]  We AFFIRM.

## FACTS

In 2006, appellees Patricia Malik and Shafqat Malik met with real estate brokers Syed Zakir Hussain ("Zakir Hussain")[2] and Raza Ali regarding potential investment opportunities.  Zakir Hussain and Ali owned and operated Real Realty.

The first investment proposal involved the purchase of a gas station located in Simi Valley, California.  Based on representations made by Real Realty, the Maliks believed that, in exchange for an initial investment, Mrs. Malik would hold a 25% interest in a four-person partnership, SJPJ Partners, that, in turn, would own and operate the gas station.  The Debtor was slated as another 25% partner.  Amenable to the proposed venture, the Maliks invested $62,500.

The gas station sale closed eight months later.  Just before the closing, however, Zakir Hussain approached Mrs. Malik for additional, "emergency" financing in order to complete the sale.  The Maliks agreed and tendered an additional $100,000.  The sale apparently closed two days later.

Unbeknownst to the Maliks, however, SJPJ Partners neither

---

[1]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[2]  Given the similarities between the names of the Debtor and Syed Zakir Hussain, we so refer to the latter for the sake of clarity.  To our knowledge, the parties are unrelated.

2

purchased the gas station nor otherwise acquired title. Instead, the Debtor purchased the gas station and was the sole owner. Eventually the Maliks learned the details of the purchase and demanded repayment directly from the Debtor. The Debtor later provided Zakir Hussain with two signed, but otherwise blank, checks payable from a personal bank account. Zakir Hussain completed the checks, making both payable to Patricia Malik and in the amounts of $62,500 and $100,000. He then transferred both checks to the Maliks; both checks were returned for insufficient funds by the Debtor's bank.

In 2010, the Maliks commenced an action in state court against the Debtor, among others, relating to the purchase and sale of the gas station. Facing that action and a failing gas station business, the Debtor filed his bankruptcy case in April 2011. Not long after, he lost the gas station to foreclosure.

The Maliks objected to the Debtor's discharge pursuant to § 727(a)(3), among other § 727(a) grounds, and also sought to except the $162,500 debt from discharge under various provisions of § 523(a). The bankruptcy court, after a one-day trial, found that the Debtor failed to maintain adequate records or to justify his failure to do so and ruled in favor of the Maliks on the § 727(a)(3) claim. It denied the remainder of their § 523 and § 727 claims. A judgment confirming the § 727(a)(3) ruling was entered thereafter.

The Debtor timely appealed from the judgment.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C.

3

§§ 1334 and 157(b)(2)(J). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err in denying the Debtor's discharge under § 727(a)(3)?

## STANDARD OF REVIEW

In an action for denial of discharge, we review: (1) the bankruptcy court's determinations of the historical facts for clear error; (2) its selection of the applicable legal rules under § 727 de novo; and (3) its determinations of mixed questions of law and fact de novo. Searles v. Riley (In re Searles), 317 B.R. 368, 373 (9th Cir. BAP 2004), aff'd, 212 F. App'x. 589 (9th Cir. 2006).

Factual findings are clearly erroneous if illogical, implausible, or without support from inferences that may be drawn from the facts in the record. Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010). We give great deference to the bankruptcy court's findings when they are based on its determinations as to witness credibility. Id. (As the trier of fact the bankruptcy court has "the opportunity to note variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.").

## DISCUSSION

The Debtor assigns error to the bankruptcy court's denial of his discharge as follows: (1) the Maliks lacked standing to object to discharge as they were not his creditors; (2) the Maliks failed to make a § 727(a)(3) prima facie case; and (3) insofar as the burden of proof actually shifted, the bankruptcy

4

court incorrectly found that he failed to meet his statutory burden of proof. We first address the standing issue.

**A. The Maliks were creditors of the Debtor and, thus, were authorized to object to his chapter 7 bankruptcy discharge.**

Only a panel trustee, a creditor, or the U.S. Trustee may object to a debtor's discharge under § 727(a). See 11 U.S.C. § 727(c)(1). The Debtor argues that the Maliks were not creditors and, thus, lacked standing to bring a § 727(a)(3) claim. The Maliks, in response, contend that the Debtor raises this issue too late, i.e., for the first time on appeal and argue that, in any event, they are creditors of the Debtor based on the two checks they received from the Debtor.

Standing is a threshold jurisdictional issue and, thus, ordinarily "we bear an independent obligation to assure ourselves that jurisdiction is proper before proceeding to the merits." See Plains Commerce Bank v. Long Family Land & Cattle Co., 554 U.S. 316, 324 (2008). This obligation applies whether or not the Debtor raises standing for the first time on appeal. See id.

A recent Supreme Court decision – Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S.Ct. 1377, 2014 WL 1168967 (Mar. 25, 2014) – causes us pause, however. In Lexmark, the Court examined the propriety of limiting adjudication of a statutory claim, which otherwise presents a case or controversy, based on prudential grounds. It held that such limits were improper. Id. at *7. Instead, the Court stated that whether a plaintiff falls within a class legislatively authorized to sue under a federal statute is not a question of standing, but one of statutory interpretation. See id. at *6-7. Such an inquiry, in

5

turn, is non-jurisdictional. See id. at *7 n.4.

Here, whether the issue is one of standing, as the parties argue, or one of statutory interpretation, and thus subject to waiver, is ultimately inconsequential. We may exercise our discretion to entertain an issue, even if raised for the first time on appeal, if it presents a pure legal issue and is central to the case. See Sierra Switchboard Co. v. Westinghouse Elec. Corp., 789 F.2d 705, 708 n.1 (9th Cir. 1986). Whether the Maliks are creditors for the purposes of § 727 is a legal issue and clearly central to the case as it involves the Debtor's bankruptcy discharge. We therefore examine the creditor status issue.[3]

A "creditor" is defined as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). And a "claim" is broadly defined: it is either a right to payment or an equitable remedy, "whether or not such right . . . is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." Id. § 101(5). Ultimately, only creditors with claims affected by a debtor's discharge can

---

[3] Given our determination, we need not decide whether waiver occurred. In any event, it appears to be a question open to debate; we note, for example, that in his post-trial brief, the Debtor asserted that the Maliks were not his creditors in response to each claim except the § 727(a)(3) claim. While reasonable minds may differ, it is not unreasonable to infer that this failure was attributable to oversight rather than a conscious decision on the Debtor's part. And, certainly, at the time that the case was filed, the Maliks possessed the § 523 related tort claims against the Debtor, thereby establishing their creditor status until the bankruptcy court decided against them on those claims.

6

object to discharge. See Stanley v. Vahlsing (In re Vahlsing), 829 F.2d 565, 567 (5th Cir. 1987).

The Maliks asserted numerous claims against the Debtor, including the various § 523 tort claims. But, concurrent with the judgment on the § 727(a)(3) claim, the bankruptcy court found that their § 523 tort related claims lacked merit. It did not address what claim remained, and without a claim that supported continuing creditor status, the Maliks lacked the ability to object to the Debtor's discharge.

As stated, the Maliks contend that the return of two checks without payment established their creditor status. Before the bankruptcy court (and somewhat on appeal), the Debtor disputed that he gave any checks to the Maliks, testifying that he gave Zakir Hussain two signed but otherwise "blank" checks. The bankruptcy court, however, found that "[a]t one point in 2008 the debtor gave the [Maliks] two postdated checks, one for [$]62,500 and one for [$]100,000, which were both returned for non sufficient funds . . . ." Oral Op. Tr. (June 17, 2013) at 11:5-7. This finding was clearly erroneous as there is no dispute that the Maliks obtained the checks from Zakir Hussain, not directly from the Debtor. Even so, the error is harmless as the Debtor's own actions concerning the checks independently gave rise to the Maliks' claim.

First, the Debtor essentially negotiated the checks to the Maliks. The checks were negotiable instruments. See Cal. Com. Code § 3104; Spencer v. Sterling Bank, 63 Cal. App. 4th 1055, 1058 (1998). As the checks were signed by the Debtor without a

7

payee,[4] they were payable to bearer and, thus, enforceable by any person in possession of the checks. See Cal. Com. Code §§ 3109; 3205; 3301.

The Debtor cannot disclaim the checks on the basis that Zakir Hussain altered the checks. It was reasonable to assume that Zakir Hussain would fill in the blank spaces. See Cassetta v. Baima, 106 Cal. App. 196, 199 (1930) ("The general rule is that, if one signs an instrument containing blanks, he must intend it to be filled in by the person to whom it is delivered."). And, by endorsing the checks in blank and simply handing them over to Zakir Hussain, the Debtor subjected himself to possible liability against a drawee or obligee. See Cal. Com. Code § 3406(a) (person who is negligent and contributes to alteration of instrument is precluded from asserting the alteration or forgery against a person who, in good faith, takes an instrument for value or for collection).

Second, under California law, the returned checks created a quasi-contractual relationship between the Debtor and the Maliks,

---

[4] At oral argument, the Debtor attempted to argue that he did not provide the checks to Zakir Hussain, let alone endorse the checks in blank. His own testimony, however – both in his deposition and at trial – provides to the contrary. Trial Tr. (Dec. 20, 2012) at 69:5-19; Syed Shahzad Hussain Dep. (Mar. 13, 2012) at 73:13-22; 74:9-10; 75:17-18.
In addition, the Maliks' counsel pointed out at oral argument that the declaration of Hakeem Bharwani established that the Debtor, in fact, was present when Zakir Hussain delivered the checks to the Maliks. See Adv. ECF No. 31, Pt. 5. The bankruptcy court's decision does not reference the Bharwani declaration and, thus, neither do we. In any event, whether the Debtor was physically present when Zakir Hussein presented the checks to the Maliks is ultimately irrelevant. If true, it only serves to strengthen our conclusion as to the Maliks' creditor status.

8

even if one did not previously exist. See Roff v. Crenshaw, 69 Cal. App. 2d 536, 541 (1945) (noting that "[t]here seems to be no doubt as to the right of the payee of a check, upon its nonpayment, to sue the drawer either upon the check itself or on the original consideration.") (citation omitted); see also Gambord Meat Co. v. Corbari, 109 Cal. App. 2d 161, 162 (1952) (party may create a payment liability to a payee by providing a personal check even if on the obligation of another).

Based on the foregoing, the Maliks held a claim against the Debtor which, in turn, sufficiently conferred creditor status for the purposes of § 727(a). See 11 U.S.C. §§ 101(5); 101(10)(A); 727(c)(1). The Maliks, thus, were authorized to object to the Debtor's discharge.

**B.    The bankruptcy court did not err in granting judgment in favor of the Maliks on their § 727(a)(3) claim.**

Section 727(a)(3) provides for denial of discharge where, among other things, a debtor failed to keep or preserve any recorded information from which his financial condition or business transactions might be ascertained. The underlying purpose of this subsection is "to make discharge dependent on the debtor's true presentation of his financial affairs." Caneva v. Sun Communities Operating Ltd. P'ship (In re Caneva), 550 F.3d 755, 761 (9th Cir. 2008).

Even so, § 727(a)(3) "does not require absolute completeness in making or keeping records." Id. Instead, a debtor must only "present sufficient written evidence which will enable his creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period

9

in the past." Id. A debtor's "duty to keep records is measured by what is necessary to ascertain [his] financial status." Moffett v. Union Bank, 378 F.2d 10, 11 (9th Cir. 1967); see also U.S. Trustee v. Hong Minh Tran (In re Hong Minh Tran), 464 B.R. 885, 893 (Bankr. S.D. Cal. 2012)(type of debtor, as well as debtor's sophistication, informs the bankruptcy court's determination).

1. **The bankruptcy court did not err in determining that the Maliks established a prima face case under § 727(a)(3).**

An objector establishes a § 727(a)(3) prima facie case by showing that: (1) the debtor failed to maintain and preserve adequate records; and (2) this failure rendered it impossible to ascertain the debtor's financial condition and material business transactions. In re Caneva, 550 F.3d at 761. Once the objector makes this showing, the burden shifts to the debtor to justify the inadequacy or nonexistence of records. Id. Whether a debtor failed to maintain and preserve adequate records is a finding of fact, which we review for clear error. Cox v. Lansdowne (In re Cox), 904 F.2d 1399, 1401-02 (9th Cir. 1990).

Here, the Debtor argues that he provided all of the information relating to the gas station's gross revenues to his accountant,[5] who, in turn, used that information to prepare the Debtor's personal income tax returns. He also points out that the Schedule C tax statements, detailing the business's profits

---

[5] The Debtor testified that the same firm handled his bookkeeping and accounting. Trial Tr. (Dec. 20, 2012) at 33:23-25; 34:1. The record shows that he used the terms interchangeably.

10

and losses, were attached to the returns.

The bankruptcy court agreed that the only relevant records produced by the Debtor relating to the gas station's transactions were his personal income tax returns. It acknowledged the Debtor's testimony that he kept a log of the business's gross sales and reported all activities to his accountant and that all gas station income was reported on the income tax returns, including monthly rental income from an independent auto body shop tenant on the premises. It ultimately found, however, that the Debtor's records were inadequate as the income tax returns, with nothing more, failed to reasonably present the Debtor's financial condition and his business transactions relating to the gas station. It thus determined that the Maliks established a prima facie § 727(a)(3) case. On this record, we agree.

The Debtor operated the gas station for approximately four years, during which time he purchased and sold gasoline, rented a space on the premises to an auto body shop for $5,000 a month, and presumably purchased and sold goods at the convenience store also located on the premises. It appears that he operated the business through one general business account. Yet the record reflects that as to the gas station's transactions during the pertinent four-year period, the Debtor only produced his personal income tax returns. He, for example, did not produce the revenue log, general account statements, or credit card statements relating to payment of the gasoline "jobber" invoices. And although the Debtor asserts that he reported all financial information to his accountant, he never clearly explains what this other information was.

11

At oral argument, the Debtor represented that he produced other financial documents. Our review of the record shows that not to be the case. The Debtor provided other documents relating to the gas station purchase, such as the deed of trust, loan agreement, escrow instructions, and SBA authorization. These documents are not records relating to the gas station's business transactions during the pertinent four-year operating period.

What the Debtor fails to grasp is that, where a business is involved, simply producing a bottom line number as to income earned, expenses incurred, or losses suffered during a calendar year may be insufficient. Under these circumstances, the income tax returns or Schedule C tax statements could not meaningfully inform a creditor as to the nature and quality of the gas station's profits and expenditures. This is particularly true in the context of a cash intensive business where creditors cannot easily identify possible preferences or fraudulent transfers without more detail.

While the record may contain facts supportive of alternate inferences, the bankruptcy court was in the best position to evaluate the documentary and testimonial evidence. See In re Retz, 606 F.3d at 1196. Viewed through the deferential lens required on appellate review, the bankruptcy court's findings were not clearly erroneous. See id.; see also Palmdale Hills Prop., LLC v. Lehman Commercial Paper, Inc. (In re Palmdale Hills Prop., LLC), 457 B.R. 29, 40 (9th Cir. BAP 2011) (when there are two permissible views of the evidence, the bankruptcy court's choice between them cannot be clearly erroneous). It thus did not err in determining that the Maliks established a prima facie

12

case under § 727(a)(3).

The Maliks having made a prima facie showing, the burden shifted to the Debtor to justify the inadequacy or nonexistence of records. See In re Caneva, 550 F.3d at 761.

**2. The bankruptcy court did not err in determining that the Debtor failed to justify the inadequacy or nonexistence of records.**

The Debtor explicitly argues, for the first time on appeal, that his lack of business sophistication, as well as his limited English proficiency, explain any inadequacy or nonexistence of records. We do not consider arguments not raised before the bankruptcy court. The cases cited by the Debtor in support of his position, thus, are unavailing, as those cases involved matters where the bankruptcy court expressly made findings as to the debtor's level of business sophistication and education.[6]

Here, the bankruptcy court found that the Debtor failed to offer a reasonable justification for the inadequacy or nonexistence of records. Acknowledging that he ran a "mom and

---

[6] See Floret, LLC v. Sendecky (In re Sendecky), 283 B.R. 760, 764 (8th Cir. BAP 2002) (no clear error as to bankruptcy court's finding that debtor's lack of education, sophistication, and business experience explained his inadequate business records); Strzesynski v. Devaul (In re Devaul), 318 B.R. 824, 838 (Bankr. N.D. Ohio 2004) (justification for debtor's missing recorded information included limited education and dependence on others for assistance); G & J Invs. v. Zell (In re Zell), 108 B.R. 615, 627 (Bankr. S.D. Ohio 1989) (that debtor did not keep "most fastidious and precise business records" was excusable when debtor was relatively unsophisticated businesswoman); Energy Mktg. Corp. v. Sutton (In re Sutton), 39 B.R. 390, 398 (Bankr. M.D. Tenn. 1984) (while records were not a "paragon of clarity," debtor was self-employed and had very little formal education, which justified inadequate records).

13

pop" gas station and, thus, was not required to maintain sophisticated records, it nonetheless found that the Debtor had a duty to maintain something more than personal income tax returns.

In so finding, the bankruptcy court implicitly rejected the Debtor's only proffered explanation, namely, that he turned over all financial information to his accountant. As previously noted, the Debtor never clearly explained the particulars of the financial information provided to his accountant. Nor did he offer declaratory evidence from the accountant in support of his argument. Based on the foregoing, we cannot say that the bankruptcy court's findings were clearly erroneous. See In re Retz, 606 F.3d at 1196; In re Palmdale Hills Prop., LLC, 457 B.R. at 40. Therefore, it did not err in determining that the Debtor's explanations failed to justify the inadequate or nonexistent records.

In sum, the Debtor has shown no error in the bankruptcy court's judgment denying his discharge under § 727(a)(3).

**CONCLUSION**

We AFFIRM the bankruptcy court's denial of the Debtor's discharge under § 727(a)(3).

14