**NOT FOR PUBLICATION**

FILED

OCT 08 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No. CC-13-1607-TaSpD |
| ) | |
| JENNIFER CHAN, ) | Bk. No. 09-24636-BR |
| ) | |
| Debtor. ) | Adv. No. 09-02187-BR |
| _____ ) | |
| ) | |
| JENNIFER CHAN, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| DRM ENTERPRISES, LLC, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Submitted Without Argument[**]
on September 18, 2014

Filed – October 8, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Barry Russell, Bankruptcy Judge, Presiding

_____

Appearances:    David Brian Lally on brief for appellant Jennifer
Chan; Raymond H. Aver on brief for appellee DRM
Enterprises, LLC.

_____

   [*] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

   [**] On June 17, 2014, this Panel entered an order deeming
this appeal suitable for submission on the briefs.

Before:  TAYLOR, DUNN, and SPRAKER,[***] Bankruptcy Judges.

Debtor Jennifer Chan appeals from the bankruptcy court's judgment in favor of creditor DRM Enterprises, LLC ("DRM") for false representations that her corporation, CA Price Depot, Inc. ("Price Depot"), had the ability to repay certain advances made by DRM in December 2008, and that such debt was nondischargeable under § 523(a)(2)(A).[1]  We AFFIRM.

## FACTS

The Debtor was an officer, director, and sole shareholder of Price Depot, a regional restaurant distributor, and two related corporations.  Price Depot began doing business with DRM, a poultry products broker, sometime between 1998 and 2000.  The Debtor and Ronald Richter, Jr., eventually chief executive officer of DRM, were acquainted as a result of DRM's prior business relationship with the Debtor's family.  They eventually became close friends.

Beginning in 2000, Price Depot, through Debtor, and DRM, through Richter, entered into an arrangement where, at the Debtor's request, DRM advanced money to Price Depot by wire transfer to its bank account; in effect, the advances were extremely short-term non-interest bearing loans.  Price Depot repaid DRM by issuing post-dated checks.

In July 2008, DRM, through Richter, and at Debtor's request,

---

[***] The Honorable Gary A. Spraker, Chief Bankruptcy Judge for the District of Alaska, sitting by designation.

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

2

agreed to further financially assist Price Depot. To help Price Depot with accounts payable issues, DRM agreed to purchase non-poultry products from other brokers on Price Depot's behalf or to advance payment on some of the Price Depot accounts payable. In return, Price Depot agreed to repay DRM the amount paid or advanced, plus a two percent fee. DRM also continued to broker poultry products to Price Depot and to make short term loan advances to Price Depot at the Debtor's request.

Starting in September 2008, the Debtor began requesting incrementally larger and more frequent short term loan advances for Price Depot. DRM provided the requested advances, apparently with few questions asked. As the Debtor's requests increased, however, the Debtor also caused Price Depot to provide DRM with a series of blank checks already signed by the Debtor, so that Richter could deposit repayment checks with greater ease.

The first weeks of December 2008, however, proved to be a pivotal point in the relationship. The Debtor requested – and obtained – even more substantial advances for Price Depot within the first four days of the month. DRM simultaneously deposited a number of Price Depot checks for advances then owing. And, the Debtor caused Price Depot to make three consecutive wire transfers to DRM in the total amount of $250,000 during the four day period. Upon receipt, however, and based on the Debtor's request, DRM immediately wired the $250,000 back to Price Depot as part of the advanced funds.

On December 9, 2008, DRM received notices of insufficient funds as to all of the repayment checks deposited the week before. The Debtor offered repayment to DRM of $20,000 a day to

3

resolve the insufficient funds issue. She, in fact, caused repayment to DRM of $70,000 over the course of the next month. But, these payments eventually stopped, and the Debtor stopped payment on the rest of the blank Price Depot checks in DRM's possession.

The Debtor filed a chapter 11 bankruptcy case in June 2009. Three months later, DRM commenced the nondischargeability action against the Debtor, seeking to except its claim from discharge under § 523(a)(2)(A).

At trial, the bankruptcy court received testimony from the Debtor, Richter, and DRM expert witness, Michael Borenstein. The Debtor testified that Richter and DRM were aware of Price Depot's rocky financial situation. According to the Debtor, she told Richter to hold off on deposit of the returned checks because Price Depot continued to experience financial problems and she simply needed time "to make good on those checks."

Richter's testimony was the complete opposite; he attested that he was never made aware of Price Depot's dire financial issues, that the Debtor constantly reassured him that DRM would be repaid, and that, until the checks were returned for insufficient funds, there were never repayment issues. He further testified that the Debtor never told him to hold deposit of the checks. Instead, it was his testimony that he deposited checks only after he spoke to the Debtor and she verbally authorized it.

Borenstein's testimony was brief: he stated that he was a certified public accountant who examined Price Depot's ability, at the end of 2008, to repay the DRM advances then owing. He

4

concluded after examining bank accounts and balance sheets that the Debtor's three businesses were collectively overdrawn $81,567.36 at the beginning of October 2008, which increased to $373,290.28 just two months later, even after DRM's significant cash advances. Borenstein, thus, opined that during the final months of 2008, Price Depot lacked the ability to repay DRM.

On cross-examination, Borenstein conceded that he was unaware of certain facts in conducting his analysis, i.e., the returned Price Depot checks and the Debtor's $250,000 wire transfer to DRM. The Debtor, thus, moved to strike Borenstein's testimony and evidence; the bankruptcy court denied the motion.

At the conclusion of trial and after post-trial briefing, the bankruptcy court orally ruled on the record in favor of DRM. It determined that DRM established, by a preponderance of the evidence, each element of § 523(a)(2)(A). The bankruptcy court subsequently entered a judgment in DRM's favor and deemed the judgment nondischargeable. The Debtor timely appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

///
///
///
///
///
///
///

## ISSUES[2]

1. Did the bankruptcy court err in determining that the debt was nondischargeable under § 523(a)(2)(A)?

2. Did the bankruptcy court abuse its discretion by admitting Borenstein's testimony and evidence?

## STANDARDS OF REVIEW

We review de novo whether a debt is excepted from discharge under § 523(a)(2)(A). Wank v. Gordon (In re Wank), 505 B.R. 878, 886 (9th Cir. BAP 2014). Whether there has been proof of an essential element of § 523(a)(2)(A) is a factual determination reviewed for clear error. Am. Express Travel Related Servs. Co., Inc. v. Vinhnee (In re Vee Vinhnee), 336 B.R. 437, 442-43 (9th Cir. BAP 2005).

We review evidentiary rulings for an abuse of discretion and, even then, only reverse if any error would have been prejudicial to the appellant. Van Zandt v. Mbunda (In re Mbunda), 484 B.R. 344, 351 (9th Cir. BAP 2012). A

---

[2] The Debtor also identified the following issues on appeal: whether the bankruptcy court abused its discretion by "forcing" her to testify at trial when DRM failed to provide an interpreter; whether the bankruptcy court clearly erred in finding DRM's witness more credible than the Debtor when she has limited English proficiency; and whether the bankruptcy court considered the Debtor's $70,000 payment to DRM in determining the amount of damages.

None of these issues were specifically and distinctly addressed in the Debtor's brief and, thus, we do not consider these issues on appeal. See Padgett v. Wright, 587 F.3d 983, 986 n.2 (9th Cir. 2009) (appellate court "will not consider matters on appeal that are not specifically and distinctly raised and argued in appellant's opening brief.") (internal citation omitted).

bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are illogical, implausible or without support in inferences that may be drawn from the facts in the record. See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011) (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

We may affirm on any basis in the record. Caviata Attached Homes, LLC v. U.S. Bank, N.A. (In re Caviata Attached Homes, LLC), 481 B.R. 34, 44 (9th Cir. BAP 2012).

## DISCUSSION

**A. Exception to discharge under § 523(a)(2)(A).**

A debtor is not discharged in bankruptcy from any debt obtained by "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). The creditor bears the burden of demonstrating, by a preponderance of the evidence, each of the following five elements: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of the representation or omission; (3) an intent to deceive; (4) the creditor's justifiable reliance on the representation or conduct; and (5) damage to the creditor proximately caused by reliance on the debtor's representations or conduct.[3] Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1222

---

[3] In her statement of issues in the opening brief, the Debtor challenges whether there was sufficient, admissible evidence supporting each element of § 523(a)(2)(A). She does not, however, specifically and distinctly address the fifth element of damages in her brief and, thus, we do not consider it on appeal. See Padgett, 587 F.3d at 986 n.2.

7

(9th Cir. 2010).

### 1. Misrepresentation.

The bankruptcy court first found that the Debtor misrepresented that Price Depot had the ability to repay DRM on account of the advances made in the final months of 2008. In so determining, the bankruptcy court found Richter's testimony more credible than the Debtor's on two points: (1) whether the Debtor adequately disclosed her businesses' financial problems during that time period; and (2) whether the Debtor told Richter to hold his deposit of the checks. It reasoned that the Debtor's version of events made "absolutely no sense." Hr'g Tr. (Nov. 27, 2013) at 33:20. Noting that DRM had possession of the $250,000 wire transfers during the first week of December, it questioned why DRM would relinquish this money and then continue the advances if the Debtor actually told Richter to hold the checks for deposit and disclosed the full extent of Price Depot's precarious financial situation.

Viewed through the deferential lens required on appellate review, these findings are not clearly erroneous. The bankruptcy court's skepticism of the Debtor's allegations of full disclosure was reasonable. Its finding that a misrepresentation occurred is bolstered by the expert testimony establishing the overdrawn condition of Price Depot and the Debtor's other businesses, and the lack of contrary evidence of the financial situation from the Debtor. The findings also were based heavily on the bankruptcy court's determinations of witness credibility to which we afford significant deference. See Hussain v. Malik (In re Hussain), 508 B.R. 417, 425 (9th Cir. BAP 2014) (the bankruptcy court is in

8

the best position to evaluate the documentary and testimonial evidence).

### 2. Knowledge.

Next, the bankruptcy court found that, at a minimum, at the time the Debtor told Richter to deposit the last set of checks, she knew that DRM would not be repaid. In its estimation, it was likely that the Debtor was aware of the inability to pay in late October 2008; but, giving her the benefit of the doubt, the bankruptcy court determined that the Debtor had the requisite knowledge in early December.

Again, the bankruptcy court's finding is not clearly erroneous. The evidence before the bankruptcy court showed that the bank accounts for Price Depot and the Debtor's other two businesses were collectively overdrawn in late October and were increasingly overdrawn through the end of December 2008. And, the Debtor herself testified that, although Price Depot was struggling financially and she needed more time to "make good on the checks," she continuously requested greater and more frequent advances from DRM.

### 3. Intent to deceive.

The bankruptcy court found that the Debtor intended to deceive DRM when she failed to inform it of the inability to repay the advances in December of 2008. Its finding is not clearly erroneous; it is neither illogical nor implausible to infer, as the bankruptcy court did here, that the Debtor's failure to disclose the full extent of Price Depot's financial troubles was purposely done in order to continue the available and critically required flow of cash from DRM. And, again, the

9

bankruptcy court's finding was heavily intertwined with its credibility determinations, to which we afford significant deference. See In re Hussain, 508 B.R. at 425. We, thus, decline to second guess the bankruptcy court's plausible view of the evidence. See id. (where there are two permissible views of the evidence, the bankruptcy court's choice between them cannot be clearly erroneous).

### 4. Justifiable reliance.

In determining justifiable reliance, the bankruptcy court "must look to all of the circumstances surrounding the particular transaction, and must particularly consider the subjective effect of those circumstances upon the creditor." In re Wank, 505 B.R. at 894.

The bankruptcy court here found that Richter justifiably relied on the Debtor's representations. It noted that Richter was aware that the Debtor's business operation "was sort of a balancing act . . . [,] trying to get better credit . . . [,] better terms." Hr'g Tr. (Nov. 27, 2013) at 32:18-20. It also determined that Richter had simply tried to help a very close friend and, thus, he had not "stuck his head in the sand" as to the potential signs of financial distress. But, the bankruptcy court also found that Richter was a businessman who expected repayment and that had he known the extent of the Debtor's cumulative financial problems, he would not have caused DRM to advance additional money.

The record confirms that long-term personal and business relationship between the parties; a relationship grounded in friendship and trust. Unfortunately, a decade plus of friendship

10

and trust quickly cratered at the end of 2008. Had the long-term relationship not existed, the Debtor's requests for larger and more frequent advances may have raised some legitimate red flags. But given the relationship and history of repayment over a number of years, the bankruptcy court did not clearly err in finding that DRM (through Richter) developed, fairly, a trust in the Debtor that she would make good on the advances. Coupled with the evidentiary record and affording due deference to the bankruptcy court's credibility determinations, we determine that the bankruptcy court did not clearly err in finding justifiable reliance.

Based on the foregoing, the Debtor has not shown that the bankruptcy court's findings were clearly erroneous. We, thus, conclude that the bankruptcy court did not err in determining that the debt owed to DRM was excepted from discharge under § 523(a)(2)(A).

**B. Expert witness testimony and evidence.**

The Debtor also argues that DRM's expert witness lacked credibility because he was unaware of key facts: the Price Depot checks returned for insufficient funds and the Debtor's $250,000 wire transfer to DRM during the first week of December 2008. She contends that Borenstein lacked complete financial data in rendering his analysis and, thus, challenges his opinion that Price Depot could not repay DRM.

We will reverse a bankruptcy court's evidentiary ruling only if it abused its discretion and the error was prejudicial to the appellant. See In re Mbunda, 484 B.R. at 351. On this record, there is no indication that the bankruptcy court abused its

11

discretion. As it indicated at trial, the Debtor's motion to strike Borenstein's testimony related to credibility, not whether the testimony was admissible.

And, although Borenstein acknowledged at trial that he was unaware of certain facts when he conducted his analysis, he pointed out that his analysis was limited to "inflows, the wire transfers in and the intercompany transfers." As both the Debtor and Richter testified, the $250,000 in wire transfers were not intended as repayment to DRM; DRM immediately returned the funds. In sum, the Debtor has not shown an abuse of discretion as to the evidentiary ruling in relation to the Borenstein testimony.

**CONCLUSION**

Based on the foregoing, we AFFIRM the bankruptcy court.

12